OCTAVIUS D. DOLLIFF *et al. vs.* BOSTON & MAINE RAILROAD.

York. Decided April 4, 1878.

*Deed. Drain. Easement.*

Implied grants are not to be favored, and will not be held to exist except in cases of clear necessity. Thus, a right of drainage through the grantor's adjoining land will not pass by implication, (the deed being silent upon the subject) unless such right is clearly necessary to the beneficial enjoyment of the estate conveyed, though a drain has already been constructed through the adjoining land, and is in use at the time of the conveyance.

ON REPORT.

This is an action for an alleged interruption of plaintiffs' drain, by the erection of an abutment which prevents the use of the drain as before. The case was referred to the presiding justice to determine the facts, the law court to decide the questions of law arising thereon.

The facts found are as follows : " Prior to the year 1847, one

Wm. Smith was the owner of all the land lotted upon the plan, bounded northerly by Smith street, and westerly by Main (now Elm) street, in the city of Biddeford, and he was also at the same time owner of all the land opposite these lots, between Smith street and Saco river, both running in the same general direction and near each other. In 1847 Smith erected, on what is now lot No. 1, (premises of plaintiffs') at the corner of Smith and Elm streets, a store with a dwelling overhead. In the cellar was a living spring, the overflow of which was carried off by an underground wooden drain, about six inches square in its passage, laid several feet under the surface, and extending out from the cellar in about the center of the lot, and running across what is now lot " six " and the " passage way " and a part of lot " seven," wending northerly, so as to pass out from lot " seven " under Smith street and the territory north of Smith street to the river. The drain was maintained in this situation from 1847 until it was interfered with when the railroad bed was constructed, in the fall of 1871. There was nothing visible upon the face of the earth outside the cellar of the store to indicate that there was any drain through any of the lots, when either the plaintiffs or the defendants purchased the premises hereinafter named as respectively deeded to them.

" In 1854 the administrator of Smith laid his land on the southerly side of Smith street into lots, upon a plan recorded in the registry of deeds, July 29, 1854, and in 1854 sold the different lots, deeding them according to the plan. He first sold lot No. ' one ' and buildings thereon, in the usual form of an administrator's deed, to a person under whom the plaintiffs succeeded to their present title (in 1865). The administrator afterwards conveyed by the same form of deed the balance of the lots to one Luke Hill, under whom the defendants succeeded to their present title of lots ' six ' and ' seven.'

" The defendants located their road across number ' seven ' in October, 1871, and so as to pass over the drain at the easterly corner of lot ' seven,' but no where touching lot ' one.' No statutory proceedings were ever had to settle the damages for crossing lot ' seven;' but the defendants, by deed of October 13,

1871, purchased of Locke and others lot 'seven,' and, by deed of March 1, 1872, purchased of Hardy and others lot 'six.' The drain is not specifically named in any of the deeds of conveyances before enumerated; and lots 'six' and 'seven' were conveyed to the defendants, without any exception or reservation, by deeds of general warranty.

"In September, 1871, the defendants contracted with Andrews & Haynes to do certain stone work on that portion of the road which includes the crossing of lot 'seven.' Under this contract the contractors laid a solid stone abutment on the southerly side of Smith street, for the railroad bridge above the street to rest upon; being upon their lot number 'seven;' the foundations being deeper than the drain and cutting it off at that point. This caused the water to flow back upon the plaintiffs' premises, at times filling and injuring the use of their cellar. Thereupon ·the plaintiffs laid a new drain across Smith street, connecting with the old drain at a point nearer their own premises, and westerly and clear of the stone abutment, at a cost of $113. It would have been practicable, so far as the lay of the land is concerned, to have carried off the water from number 'one' by carrying a drain therefrom directly to Smith street, without crossing number 'six,' and thence down Smith street, so as to connect with the old drain at its passage across Smith street, costing not exceeding the sum of $175. The plaintiffs' damages, if entitled to recover, are $200."

*R. P. Tapley*, with *S. P. McKenney*, for the plaintiffs.

*G. C. Yeaton*, for the defendants.

WALTON, J. The plaintiffs are not entitled to recover, for the reason that they have failed to establish a right of drainage through the defendants' land. Undoubtedly such a right may be established by an implied grant as well as by an express grant. But implied grants are not to be favored. They should not be held to exist except in cases of clear necessity. If it is intended that an easement shall pass as one of the appurtenances of an estate, it is very easy to have this intention expressed in the deed. If the deed is silent upon the subject, it is no more than fair to the

grantor to presume that he did not so intend; and, to overcome this presumption, to require of the party claiming the easement clear proof that it is necessary to the beneficial enjoyment of the estate conveyed to him. Such is the doctrine maintained in Massachusetts, and it meets our approbation.

In *Johnson* v. *Jordan*, 2 Met. 234, the court held that where the owner of two adjoining messuages and lots of land constructs a drain through one of them for the drainage of the other, and then sells the lots to different purchasers on the same day, and in the deed of the lot drained does not mention the drain, such purchaser acquires no right to the use of the drain through the other lot, if he, by reasonable labor and expense, can make a drain without going through that lot.

In *Thayer* v. *Payne*, 2 Cush. 327, the court say that the question in such a case is whether the drain is necessary to the beneficial enjoyment of the estate conveyed; that this question involves the inquiry whether or not a drain can be conveniently constructed at a reasonable expense without going through the grantor's land; because, if the grantee can thus furnish his premises with a drain, it cannot be necessary to the enjoyment of his estate that he should have a drain through the grantor's land.

Upon this point the plaintiffs' case fails. The burden of proof is upon them to show, not only that a drain to their premises is necessary, but that it is necessary that it should go through the defendants' land. In other words, that they could not, at a reasonable expense, provide their premises with a drain without going through the defendants' land. This they have failed to do. On the contrary, it is stated as a fact in the case that such a drain could be constructed at an expense not exceeding $175.

*Judgment for defendants.*

APPLETON, C. J., BARROWS, VIRGIN, PETERS and LIBBEY, JJ., concurred.