## AUGUST BUSSMEYER v. CHARLES JABLONSKY, Appellant.

### Division One, March 29, 1912.

1. **EASEMENT: Implied: Necessity: Conveyance.** An implied easement must rest upon a reasonable necessity. If there is another reasonable way of entrance over the grantee's own land on to the lot conveyed to him, an easement by implication will not be impressed upon the property adjoining, simply because that easement was there when both lots were owned by a common grantor and had been used by his tenants for a long number of years as a means of entrance upon the lot. So long as the element of necessity or reasonable necessity is lacking, the rule relating to dominant and servient estates does not apply. Unless the easement is necessary to the beneficial enjoyment of the property conveyed it will not be implied from a conveyance of the lot benefited by the existing easement by a deed which does not mention the easement.

2. ————: ————: ————: **Deed: Appurtenance.** Deeds are to be construed as meaning what the language in them imports. The deed describing lots by number, or by metes and bounds, cannot be held to include as an appurtenance an easement upon an adjoining lot, conveyed by the same common grantor, unless the easement is necessary to the enjoyment of the lot in favor of which it is claimed—a necessity that must be implied from the arrangement, nature and the long continued uses to which the segregated lots have been put and are from their nature to be put. It can never be implied from considerations of convenience.

3. ————: ————: ————: **Passage Way Between Houses.** There had been a hall or passage way between lots 7 and 8, which extended from the western line of lot 7 four feet to the building on lot 8, and was used as a means of entrance upon the rear of both lots, and had been so used for many years by the tenants of the common grantor, when he conveyed lots 8, 9, 10, 11 and 12 to plaintiff, and lots 5, 6 and 7 to defendant,

describing them by number and by metes and bounds, and omitting all reference to the passageway. There was a street in front of the lots and an alley at the rear, and in the west side of the building on lot 8 there were three doors opening upon lot 9, and plaintiff testified that he could use lot 9 and those doors as a means of entrance upon the rear of lot 8 "only" because lot 9 was his "own ground." *Held*, that the passageway was not a strict necessity, or a reasonable necessity to a proper use of lot 8, but a matter of convenience, and being wholly on lot 7 conveyed to defendant, no easement can be implied.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule*, Judge.

REVERSED AND REMANDED (*with directions*).

*August W. Waltz, Jr.*, and *W. G. Carpenter* for appellant.

(1) Plaintiff's petition does not set forth facts showing that any necessity existed for an easement in the passageway over defendant's property. In Missouri and many other States there must be, if not a "strict necessity" to support the easement, at least a "reasonable necessity." Barrett v. Bell, 82 Mo. 110; Mulrooney v. Obear, 171 Mo. 613; Vossen v. Dantel, 116 Mo. 379; Peters v. Worth, 164 Mo. 431; Tiedeman on Real Property (3 Ed.), sec. 432. (2) Three elements are essential to create an easement by severance: (a) A separation of the title; (b) So long continued in use and so obvious in construction as to show permanency; (c) must be necessary to the beneficial enjoyment of the land granted. Long continued, obvious and permanent use. Reiners v. Young, 109 N. Y. 648; Kelly v. Dunning, 43 N. J. Eq. 62; Jobling v. Tuttle, 75 Kan. 351; Ice Co. v. La Plant, 136 Iowa, 621. Must be necessary. Whiting v. Gaylord, 66 Conn. 337; Mosher v. Hibbs, 24 Ohio (C. C.) 375; Goodall v. Godfrey, 53 Vt. 219; Seidel v. Bloeser, 77 Mo. App. 180; Mulrooney v. Obear, 171 Mo. 619; Barrett v. Bell, 82 Mo. 113; Brakely v. Sharp, 9 N. J. Eq. 9; Webber v. Miller, 9 Ohio (C. C.) 674; Miller

v. Hoeschler, 126 Wis. 263; Buss v. Dyer, 125 Mass. 287; Adams v. Marshall, 138 Mass. 228. (3) The "necessity" must be a real necessity, not a mere convenience. Field v. Mark, 125 Mo. 502; Vossen v. Dantel, 116 Mo. 385; Paine v. Chandler, 134 N. Y. 385; Hyde v. Jamaica, 27 Vt. 460; Valley Falls Co. v. Dolan, 9 R. I. 489; Hall v. Austin, 20 Tex. Civ. App. 63; Ward v. Robertson, 77 Iowa, 159; Allen v. Kincaid, 11 Me. 156; Burns v. Gallagher, 62 Md. 462; Washburn on Easements (4 Ed.), p. 107, sec. 3; Jones on Easements, secs. 315, 317; Schmidt v. Quinn, 136 Mass. 575. (4) There is no evidence in this case showing an intention on the part of the common grantor to create a permanent easement of way over defendant's lot in favor of plaintiff's property, but any use of the said passageway was, to say the most, merely permissive.

*Julius T. Muench* for respondent.

(1) Where the owner of a heritage consisting of several parts has arranged and adapted these so that one derives a benefit or advantage from the other, of a continuous and obvious character, and he sells one part without making mention of such benefits or advantages, there is an implied understanding that they shall nevertheless continue, with respect to the various parts of the property, as before the separation of the title. Martin v. Murray, 221 Ill. 632; 14 Cyc. 166; Lampman v. Milks, 21 N. Y. 505; Overdeer v. Updegraff, 69 Pa. St. 110; Kieffer v. Imhoff, 26 Pa. St. 438; Huttemeier v. Albro, 18 N. Y. 48; Ins. Co. v. Patterson, 103 Ind. 582; Durel v. Boisblanc, 1 La. Ann. 407; Wrightsell v. Hale, 90 Tenn. 556; Goodall v. Godfrey, 53 Va. 219; Toothe v. Bryce, 50 N. J. Eq. 589; Goddard on Easements (Bennett's Am. Ed.), 119; Jones on Easements, sec. 154; Watts v. Kelson, 6 Ch. App. 166; Powers v. Hefferman, 233 Ill. 597; Hawkins v. Hendricks, 247 Ill. 521; Washburn on Ease-

ments and Servitudes (4 Ed.), 105; Gayette v. Both-
une, 14 Mass. 49; Hall v. Morton, 125 Mo. App. 323.
(2) The best considered cases hold that the ease-
ment need not be necessary, but merely convenient to
the enjoyment of the dominant estate. See cases
cited supra. (3) Authorities requiring the element
of necessity in an easement by grant, nevertheless
hold that a right of way by implication may attach to
a part of the property, even where the way is not
strictly one of necessity, provided it is reasonably
necessary to the convenient enjoyment of the domi-
nant part of the property. References as supra. Jones
on Easements, secs. 145, 147, 154, 157.

GRAVES, P. J.—At one time the Connecticut
Mutual Life Insurance Company was the owner of
all the property discussed and involved in this suit.
April 23, 1903, plaintiff acquired from said insurance
company property described in the deed thus:

"A lot of ground in block number 1744 of said
city of St. Louis, having a front of one hundred forty
(140) feet and five (5) inches on the south side of
Salisbury street by a depth of one hundred and twenty-
five (125) feet to an alley fifteen (15) feet wide, and
known as lots eight (8), nine (9), ten (10), eleven (11)
and twelve (12) of Cope's subdivision of said block
1744; together with the improvements on said lot 8.

"Subject to a lease to said second party, expiring
May 1, 1907."

Plaintiff at the time of the purchase was a tenant
of the insurance company under a written lease which
contained an option to purchase. In this lease, the
lands are described thus:

"A lot of ground fronting one hundred and forty
feet and five inches (140′ 5″) on the south line of Salis-
bury street in block number 1744 of the city of St.
Louis, Missouri, being lots number 8, 9, 10, 11 and 12
in said block, together with a certain two-story brick

building known as numbers 2518 and 2520, Salisbury street, situated on said lot number 8.''

In August, 1907, the defendant acquired by deed from the said insurance company, lands thus described:

''All of lots number five (5), six (6), and seven (7), of Cope's subdivision, in city block number 1744 of said city of St. Louis, having an aggregate frontage of seventy-nine (79') feet, six and one-half (6½'') inches on the south line of Salisbury street, by a depth southwardly, between parallel lines, of one hundred and twenty-five (125') feet, more or less, to alley, together with all improvements thereon, known as numbers 2510, 2512, 2514 and 2516 Salisbury street. Bounded north by Salisbury street, south by alley, east by lot number 4 of said subdivision and block, and west by property now or formerly, of A. Bussmeyer.'''

The deeds from the insurance company to each of the parties contained the usual covenants of warranty. All the property fronted north on Salisbury street. The insurance company acquired title by a trustee's deed in November, 1877. On lot number 8, belonging to plaintiff, was a two-story brick building and there was likewise a two-story building on lot number 7, belonging to defendant. Lot number 8 lies to the west of lot number 7. Plaintiff by his petition avers:

''That the said land of the defendant and the said lot number 8 belonging to plaintiff are improved by two-story brick store and dwelling buildings. That the said buildings were erected by the predecessor in title of the said life insurance company, and said buildings are all attached. That the building upon plaintiff's said lot is numbered 2518 and 2520, Salisbury street. That between plaintiff's said building number 2518, Salisbury street and defendant's building number 2516, situated upon part of lot number 7, is a hallway four feet in width, the second story of said build-

ing number 2516, Salisbury street extending over and covering the said hallway, the joists of said building resting in the east wall of plaintiff's said building number 2518, Salisbury street. That for more than thirty years before the conveyance of the lots herein-before described to plaintiff, the said hallway between said buildings had been by the said Connecticut Mutual Life Insurance Company and its predecessors in title and by their tenants occupying the said building number 2518, Salisbury street, always used as an entrance to the rear portion of said lot and the second story of said building. That, during all of said time, the rear yards of the said buildings numbers 2516 and 2518, Salisbury street, were divided by a fence upon a line which was a prolongation of the western wall of said building number 2516, Salisbury street and the eastern line of said hallway, the said hallway and yard immediately back thereof being thus for more than thirty years before plaintiff acquired said property used in connection with the said building number 2518 Salisbury street. That the said hallway is the only means of ingress and egress to and from Salisbury street to the rear part of plaintiff's said lot and the second story of the said building number 2518, Salisbury street, except that the same might be reached by passing through the lower story of said building. That the said entrance to said property of plaintiff is and always has been a valuable adjunct and appurtenance to the said property. That by the manner of construction of said buildings and the use thereof by plaintiff's and defendant's predecessors in title, as aforesaid, the said former owners did impose upon the said lot number 7 now owned by defendant, to the extent that the same is occupied by said hallway, a servitude in favor of the said lot number 8 and the building thereon owned by plaintiff for the use of said hallway as an entrance to said lot number 8, as aforesaid, which easement and servitude passed to plaintiff by

the conveyance from said Connecticut Mutual Life Insurance Company to him as aforesaid. That said servitude was in effect at the time of the severance of ownership by the conveyance from the said Connecticut Mutual Life Insurance Company to plaintiff, as aforesaid. That the said use of said property was apparent, and defendant, who had occupied the said property now owned by him, as a tenant for some years before he purchased the same, was familiar therewith and acquiesced therein. That when defendant purchased said lots numbers 5, 6, and 7 from the said Connecticut Mutual Life Insurance Company as hereinbefore alleged, he took the same subject to the said easement and in all things fully recognized the same until on or about the 2d day of July, 1908, when defendant, against the protests of plaintiff, did forcibly remôve the said fence and did erect a new fence extending back from the said building and coincident with the western line of said hallway, but did leave an opening or gateway in the said fence immediately next to plaintiff's rear wall, whereby entrance to defendant's yard from said hallway could be had. That defendant, on the 5th day of September, 1908, did, against the protest of plaintiff close the said opening by nailing boards across the same, whereby entrance to plaintiff's land from said hallway has been completely cut off, and refused, although requested so to do by plaintiff, to remove the said obstruction and allow plaintiff and his tenants the use of said hallway. That defendant threatens to keep the said fence closed and to wholly and forever deprive plaintiff and his family and tenants from using the said hallway as an entrance as aforesaid.''

Prayer was for a mandatory injunction upon defendant to remove said obstruction, and to thereafter restrain defendant from obstructing said passageway, or denying to plaintiff the use thereof.

The answer makes many admissions and as it is not long had better be made a part of the statement. Such answer reads:

"Now comes the defendant in the above entitled cause, and for a return to the order to show cause why an injunction should not be granted as prayed for in plaintiff's petition, issued herein on the 8th day of September, 1908, states:

"1.   Said petition does not state facts sufficient to constitute a cause of action against this defendant.

"2.   That petition filed herein does not state facts sufficient to entitle plaintiff to the relief prayed for or for any relief in a court of equity.

"3.   And for a further return to the order to show cause. herein the defendant admits that plaintiff is, and at the times in said petition stated, was the owner of the following described real estate, to-wit:

"Lots numbers 8, 9, 10, 12 of Cope's subdivision of said city block number 1744 in said city and state, but denies that the same has a frontage of one hundred and forty feet and five inches (140' 5") on the south side of Salisbury street, but on the contrary states that it has a frontage of but one hundred and thirty-nine feet and ten inches (139' 10") on the south side of said street.

"Defendant further admits that the property was acquired by purchase from the Connecticut Mutual Life Insurance Company and under deed and duly recorded as set out in plaintiff's petition.  Defendant further admits that he is, as set out, the owner of lots numbers 5, 6, 7 of said city block number 1744 and fronting seventy-nine feet, six and one-half inches (79' 6½") on Salisbury street, having likewise acquired the same from the said common grantor, the Connecticut Mutual Life Insurance Company under deed and duly recored as set out in plaintiff's petition.

"Defendant further admits that the said land of plaintiff and defendant is improved with a two-story

attached brick building as set out in plaintiff's peti-
tion, but denies that there is a hallway between said
buildings of plaintiff and defendant as set out in plain-
tiff's petition, but on the contrary states that what-
ever hallway there may be on the said property, is a
hallway through defendant's building and wholly ly-
ing upon defendant's property, and that plaintiff has
no interest either by deed or by prescription or by any
other title of any nature whatever in any such hall-
way or passage.

"Defendant further states that for a period
of more than thirty years preceding the time
at which plaintiff or defendant acquired title to the
above described property both tracts were owned by
the common grantor, the Connecticut Mutual Life In-
surance Company, and that any use of said hallway by
any tenants other than those of No. 2516 Salisbury
street, the same being defendant's property, was per-
mitted by the said Connecticut Mutual Life Insurance
Company for its own benefit in renting to its tenants
and that during all of said period the same was not
used adversely to the said Connecticut Mutual Life
Insurance Company.  Defendant states that plaintiff
holds title to the above described property by virtue
of a warranty deed of the said Connecticut Mutual
Life Insurance Company and that said deed carries
with it no rights of any nature whatever in defend-
ant's property, and that defendant's property is like-
wise secured from the said Connecticut Mutual Life
Insurance Company by a warranty deed in fee simple,
without any easement of any nature whatever in favor
of plaintiff's property or any other property.

"Defendant further states that in any use of the
aforesaid hallway by plaintiff that plaintiff has been
a trespasser upon defendant's property and that said
trespassing has become so frequent and of such a na-
ture as to annoy defendant and to constitute itself a

241 Mo.—44

nuisance; wherefore defendant closed said passage way and for the further reason that defendant desired to prevent plaintiff from acquiring a prescriptive right over defendant's property.

"Defendant further denies that said hallway was plaintiff's only entrance to Salisbury street, but on the contrary alleges that plaintiff has another and better entrance to Salisbury street through lot No. 9 of his own property to the same buiding.

"Defendant denies each and every allegation in said petition contained.

"Wherefore defendant having made full return to the order to show cause herein asks to be discharged with his costs."

Reply was general denial. Upon a hearing judgment went for plaintiff and the defendant has appealed. The evidence will be adverted to in the course of the opinion.

As will be observed by the pleadings many of the facts are admitted. The passageway or hallway in dispute is on Jablonsky's property. No contention is made to the contrary. The contention of the parties can at once be seen by short excerpts from statements of counsel in their briefs. Defendant's counsel thus outlines the case.

"We have nothing to do in this case with easements by prescription, or adverse user nor with easements by grant; nor with easements, made absolutely necessary by reason of no other access to the property; *on the contrary plaintiff claims an easement by reason of an alleged open, apparent, permanent way constructed by a common grantor, imposing upon one part of his property a burden in favor of another— which alleged open, apparent and permanent way, plaintiff claims has passed to him by a deed of the dominant property setting forth the dominant property by metes and bounds, not including the way.* The property claimed to be servient in this case was subse-

quently conveyed to defendant without mentioning the easement, and this action has been commenced against defendant to enjoin defendant from shutting off plaintiff from passing over the way claimed.''

We have italicized the portion which states the case at bar.

Counsel for plaintiff concedes this to be a correct outline of the contention.  He says:

''As the appellant properly states, the easement claimed here was not strictly one of necessity, but rather one rising from implication, because of the location and use of the hallway in controversy with reference to the various parts of the continuous row of buildings fronting on Salisbury street, owned, respectively, by the appellant and respondent, and which had been, previous to the acquisition of the property by them, owned, altogether, by the Connecticut Mutual Life Insurance Company.  For this reason the exact situation and use of the various parts of the property before the present controversy arose is of the greatest importance.''

Further on, the same counsel says:

''It is not claimed by us that, where there had been no prior usage, the easement would attach in favor of one part of property, sold by a common owner, as against another part sold to some other person, unless there was an absolute necessity for such easement. We do claim, however, that where, as in the case at bar, one part of the common property has been subject for a long time to a benefit or privilege enjoyed by the occupants of another part, and the whole property has been so improved as to indicate clearly that one part was to remain permanently subject to such benefit or privilege, this benefit or privilege becomes appurtenant to the part enjoying it and passes to a purchaser thereof, whether actually mentioned in the conveyance or not.''

The evidence shows that the floor of the second story of Jablonsky's house extends over this hallway, the joists resting in the east wall of plaintiff's building. It also shows that originally a fence was run from the east side of this passage way to or toward the alley way in the rear of all this property. That through this fence was a gateway by which entrance could be made to the rear of Jablonsky's property. That there were two or more sheds on the rear of Jablonsky's property which were reached by going through this alleyway and the gate in this fence. That Bussmeyer had these sheds rented for some years and he and his tenants thus used this alleyway and this gate. The evidence also shows that this alleyway was used by Bussmeyer's tenants in coming from Salisbury street to the rear of the house on his said lot 8. This use, both as to the Bussmeyer property and the Jablonsky property, had continued for about thirty years. Under the evidence there is no dispute that Bussmeyer can reach his property through the alley in the rear. The property we speak of is an "L" to the building fronting on Salisbury street. There is no question that the property can likewise he reached from Salisbury street by passing over lot 9, which is a part of the Bussmeyer property. This lot is to the west of the brick building and is vacant. From the evidence Bussmeyer's tenants using the rear portion of his house sometimes entered in this way. There were three doors on the west side of the Bussmeyer building which opened out toward lot 9, which lot was vacant from Salisbury street on the north to the alleyway in the rear of all this property on the south. In his testimony Bussmeyer said:

"Mr. Carpenter: Along the west side of this property, along the west side of your property there. Now, how many doors are there along the west side of your building? A. One door going from my diningroom into the lot, what I call the lot, and then there

is another door between them two houses, and then a door from the saloon out. That is three doors.

"Q. Then you have three entrances out of your building onto lot 9 on the west? A. Yes.

"Q. And those three entrances could be used if you want to open them? A. *I can use them only on account of it is my own ground.*"

The last answer contains the milk in the cocoanut. He and his tenants could (and sometimes did) come from Salisbury street to his property by going over lot 9. He says that this could be done "*only on account of it is my ground.*" In other words he seeks to enforce an implied easement over Jablonsky's ground to keep from using his own. So that the question of necessity or even reasonable necessity is out of the case, and if that is a necessary element in an implied easement, then plaintiff's case must fail. We think the weight of authority requires at least a reasonable necessity to sustain an implied easement.

In other words, the facts of this case do not bring it within the generally accepted rule relating to dominant and servient estates. The evidence is at least lacking in the element of necessity or reasonable necessity.

In 14 Cyc. 1168, the rule as to necessity is thus stated: "All easements of whatever class which pass by implication or construction of law must not only be reasonably necessary and apparent, but also permanent in their character. A mere temporary provision or arrangement made for the convenience of the entire estate will not constitute that degree of necessity and permanency required to burden the property with a continuance of the same when divided or separated by conveyance to different parties. Three things are essential to the creation of an easement in this way: (1) A separation of the title; (2) that before the separation takes place the use which gives rise to the easement shall have been so long continued and so ob-

vious as to show that it was meant to be permanent; and (3) that the easement shall be necessary to the beneficial enjoyment of the land granted or retained."

At page 1171, the same author says: "In some cases it is held that easements will not pass by implication except in cases of strict necessity. But the weight of authority sustains a rule less exacting than that of strict and indispensable necessity, namely, that the degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made, not that it shall be absolutely necessary for the enjoyment of the estate granted."

Also bearing upon the question, the same authority at page 1173, thus speaks: "No implication of a grant of a right of way can arise from proof that the land granted cannot be conveniently occupied without it. Its foundation rests in necessity not in convenience. It follows that a party cannot have a way of necessity through the land of another when the necessary way to the highway can be obtained through his own land, however convenient and useful another way might be. And the same is true where he has a prescriptive right of way over the land of another. A way of necessity is derived from the law and depends solely on the situation and boundaries of the land to which it is claimed to be appurtenant as they existed at the time of the conveyance."

In 10 Am. and Eng. Ency. Law (2 Ed.), 423, the rule is thus stated: "In some American jurisdictions, even where the distinction made by the English cases between implied grants and implied reservations is affirmed, the courts maintain that even when the quasi-dominant tenement is alienated, the alienee cannot claim an easement against the quasi-servient tenement except in a case of strict necessity. Other cases state that an easement by implied grant can arise only in cases of 'real necessity' or 'necessity;'

while the great body of authority is, as has been stated, to the effect that a 'reasonable necessity' is the proper standard.    In estimating the degree of necessity as well as the presence of the other requisites for an implied grant, much depends upon the nature of the particular easement involved.''

The English rule, spoken of above, is stated by the same authority at page 420 thus: ''According to the established English doctrine, which is supported by some of the later American authorities, if the owner of both the quasi-dominant, and quasi-servient tenements conveys the former, reserving the latter, all such continuous and apparent quasi-easements as are reasonably necessary to the enjoyment of the property granted pass to the grantee, giving rise to easements by implied grant.    If, on the other hand, the quasi-servient tenement is granted, while the quasi-dominant tenement is retained, no easement is reserved by implication, unless it is strictly necessary to the enjoyment of the property retained.    These rules are founded on the principle that a grantor shall not derogate from his own grant.''

Plaintiff contends for the doctrine announced in Toothe v. Bryce, 50 N. J. Eq. 589, wherein it is argued that the element of necessity is not necessary in an implied grant of an easement; that the easement passes with the dominant tenement as a part of the thing conveyed and without regard to the element of necessity.    The chancellor in the Toothe case, supra, at page 608, states his view in this language: ''It seems to me that the proper inquiry in such cases is whether the apparent and continuous easement in question forms a part of the tenement, and is beneficial to and adds to its value for use, and will continue to do so in the future.    If it is, then the grantee is, upon plain principles, entitled to have it continued.    He is entitled to enjoy the thing as it was when he bought it, with all its apparent appurtenances, if those apparent appur-

tenances are apparently permanent, and are useful and add to its value.'' The easement under discussion is stated by the chancellor. He says: ''The complainant by his bill seeks to establish and protect his right to the benefit of a flow of water to his premises from the defendant's premises, through two several pipes laid underground and forced up by two hydraulic rams, situate, with the spring that drives them, on the defendant's premises.''

The cases, as well as the text books, seem to emphasize the element of necessity in cases involving road or passage ways, more than in cases involving easements of a different character. The learned chancellor in the Toothe case, supra, undertakes to show that the element of necessity in implied easements through grants had its origin in the mistaken intermingling of the necessary elements of implied easements in cases where the dominant estate was not sold. The opinion is full of research and has been followed by some other cases, but is clearly not in line with the weight of authority.

In Whiting v. Gaylord, 66 Conn. 1. c. 348, Andrews, C. J., says:

''The cases in this country which have referred to Pyer v. Carter, 1 H. & N. 916, have none of them, so far as we can learn, ever followed it to its full extent. The American cases have with almost entire unanimity limited easements by implied grant to such as were open, visible—such as would be apparent to an ordinary visitor—continuous and necessary to the enjoyment of the estate granted or retained. [Carbrey v. Willis, 7 Allen, 364; Randall v. McLaughlin, 10 Id. 366; Philbrick v. Ewing, 97 Mass. 133; Lampman v. Milks, 21 N. Y. 505; Butterworth v. Crawford, 46 Id. 349; Henry v. Koch, 80 Ky. 394; Evans v. Dana, 7 R. I. 306; Providence Tool Co. v. Corliss Steam Engine Co., 9 Id. 564; Dunklee v. Wilton R. R. Co., 24 N. H. 489; Warren v. Blake, 54 Me. 276; Janes v. Jenkins,

34 Md. 1; Ingals v. Plamondon, 75 Ill. 118; Fetters v.
Humphreys, 18 N. J. Eq. 263; S. C. 19 Id. 471; Denton v. Leddell, 23 Id. 67; Parsons v. Johnson, 68 N. Y.
62; Griffiths v. Morrison, 106 Id. 165; Root v. Wadhams, 107 Id. 384.]

"These cases differ considerably as to the degree of necessity which must exist in order to raise
the implication that the easement or quasi-easement
passes; but they all concur in the rule just stated, that
it must be one which is open, visible and necessary.

"In this State the rule of construction, settled
by a series of decisions, is that the subject-matter of
a deed is to be ascertained from its premises, and
that by a deed of land described as such, nothing
passes except what is fairly included in the premises;
that an easement not naturally and necessarily belonging to the premises will not pass."

The Massachusetts court in Buss v. Dyer, 125
Mass. 1. c. 290, says:

"We are aware that it has been held in some
English cases that a deed of premises carries the right
to continue to enjoy, as easements, all privileges or
conveniences in and upon adjoining lands· of · the
grantor, which were apparent, and had been used by
the grantor in connection with the premises before
the conveyance; that the conveyance is a conveyance
of the premises 'as they are.' A leading case to this
effect is Pyer v. Carter, 1 H. & N. 916. Similar doctrine has been held in New York. [Lampman v. Milks,
21 N. Y. 505.] We do not regard this as a correct
view of the law.

"It is a well established and familiar rule that
deeds are to be construed as meaning what the language in them imports, and that extrinsic evidence
may not be adduced to contradict or affect them. And
it would seem that nothing would be clearer in its
meaning than a deed of a lot of land, described by
metes and bounds, with covenants of warranty against

incumbrances.   The great exception to the application
of this rule to the construction of deeds is in the case
of ways of necessity, where by a fiction of law, there
is an implied reservation or grant to meet a special
emergency, on grounds of public policy, as it has been
said, in order that no land should be left inaccessible
for purposes of cultivation.   This fiction has been ex-
tended to cases of easements of a different character,
where the facts have been established that the ease-
ment was necessary to the enjoyment of the estate in
favor of which it was claimed.''

In Stevens v. Orr, 69 Me. l. c. 324, the court thus
speaks:   ''The court is of the opinion that it must be
regarded as the settled law of this State that the con-
veyance of a specified parcel of real estate, described
by metes and bounds, will not carry with it a right of
way over the grantor's adjoining land (although such
way may be highly convenient, and apparent upon the
face of the earth and in actual use at the time of the
conveyance, and the deed contains the words 'with all
the privileges and appurtenances'), unless such way
is clearly necessary to the beneficial use and enjoy-
ment of the estate conveyed.   So held in Warren v.
Blake, 54 Me. 276.   And the same rule was applied
to a drain in Dolliff v. Boston & Maine R. R. Co., 68
Me. 173.   We are aware of the conflicting state of the
authorities upon this question.   We have had occasion
to examine them very fully on several occasions with-
in the last few years.   The leading cases are cited and
commented upon in the case first above cited (Warren
v. Blake), and it cannot be profitable to go over them
again.''

The rule has been consistently followed in that
State.   In the later case of Stillwell v. Foster, 80 Me.
l. c. 333, the syllabus concisely states the case and the
rule, and reads:   ''An owner of a building, contain-
ing two stores with partition wall between them, and
with stairs on one side leading to second floor and a

door through the partition wall on second floor at head of the stairs, sold the store which had no stairs, and in the conveyance made the center line of the partition line the dividing line. Held, that the conveyance did not carry with it a right of way of necessity over the flight of stairs." In the course of the opinion, the court says: "The plaintiff claims title to a right of way over the stairs by virtue of an implied grant under the deed, Harlow to Wheelwright. He cannot claim it as a way of strict necessity, for his building fronts upon the highway, and he can make a stairway upon his own premises; but rather as a way of convenience; having been so built in the beginning and so occupied both before and after the conveyance to Wheelwright, it is claimed that it has become appurtenant to and so far a part of the premises, as to pass by the deed, if not by express grant at least by implication. But there is no obscurity in the language of the deed, no question as to the precise premises covered by it. The stairs are not conveyed even if considered a part of the premises, and the only question is whether, under the facts, a right of way over the stairs is conveyed by implication.

"In this State, the rule is now so well established that the test to be applied in such cases is whether the way is one of strict necessity, that it is too late to change it. Nor do we think it desirable, for it seems to be founded not only upon a preponderance of authority but upon sound principle. It has the recommendation of simplicity and certainty, is easily applied, and works no injustice; for, the purchaser knows, or should know, what he is buying before his deed is accepted. In Warren v. Blake, 54 Me. 276, this precise question was exhaustively examined and the rule adopted. In Dolliff v. Boston & Maine Ry. Co., 68 Me. 173; and in Stevens v. Orr, 69 Me. 323, the question was raised and the rule affirmed."

In Bonelli Bros. v. Blakemore, 66 Miss. l. c. 143, that court said: "The owner of a tract of land, a part of which he afterwards grants to another, has not, of course, any easement in any part of his land while he owns the whole; he deals with it as owner and may subserve any portion to the use of the other, and may change the arrangement at his will; it is only where such arrangement is apparently permanent and intended so to be, and while so remaining the owner grants a part of the premises, that the question of easement or servitude can arise. The condition of the whole when the severance is made, the nature of the easement claimed to be granted or reserved by implication, its obviousness and continuousness, are the tests usually applied to determine the existence or non-existence of the grant or reservation. The rule seems to be of very general recognition that an easement not of strict necessity does not pass by implied grant, unless it be apparently permanent, obvious and continuous."

In Spaulding v. Abbot, 55 N. H. l. c. 426, the court says: "It is an elementary principle that whoever grants a thing is supposed tacitly to grant that without which the grant itself would be of no effect. [Broom's Maxims, 362.] But this applies only to such things as are incident to the grant, and directly necessary for the enjoyment of the thing granted. [Ib. 366.] It is implied that the grantor is the owner of such incidents as are directly necessary to the enjoyment of the grant, and has it in his power to convey them. If they are not his to convey, they cannot of course pass as an incident of the grant.

"The right to the use of this aqueduct is not either indispensable or necessary to the enjoyment of the premises conveyed, and the grant does not become ineffectual nor useless without it. It may be a great convenience to have it, and a great inconvenience to be

deprived of it; but that can have no legal effect upon the construction of this deed.''

The Indiana court has the rule of ''reasonable necessity.'' In John Hancock Mut. Life Ins. Co. v. Patterson, 103 Ind. 1. c. 587, that court says: ''The application of the rule must depend upon the nature, arrangement and use of the estate, the relation of the parts to each other, and the existing degree of necessity for giving such construction to the grant as will give effect to what may be supposed to have been, considering the manner of the use, the reasonable intendment of the parties; the underlying principle in such cases being that, included in the grant of the principal, are all such privileges and appurtenances as are obviously incident and reasonably necessary to the fair enjoyment of the thing granted, substantially in the condition in which it is enjoyed by the grantor, unless the contrary is provided.''

To the point is Valley Falls Co. v. Dolan, 9 R. I. 489. The first syllabus states the ruling in the case and reads: ''A right of way of necessity is founded upon an implied grant, and created by the necessity of its existence to the enjoyment of the estate granted. Convenience alone is not sufficient to raise the implication of a right of way.''

In Ogden v. Jennings, 62 N. Y. 1. c. 531, ALLEN, J., said: ''Easements exist as appurtenant to a grant of lands, and as arising from implication, only by reason of a necessity to the full enjoyment of the property granted. Nothing passes by implication or as incident or appurtenant to the lands granted, except such rights, privileges and easements as are directly necessary to the proper enjoyment of the granted estate. Upon the grant of a mill, every right necessary to the full and free enjoyment of the mill passes as incident to the grant; and the necessity measures the extent and duration of the right. When the necessity ceases, the rights resulting from it cease. It must be

an actual and a direct necessity. A mere convenience is not sufficient to create or convey a right or easement, or impose burthens on lands other than those granted, as incidents to the grant. In all cases the question of necessity controls.''

In Hall v. City of Austin, 20 Tex. Civ. App. l. c. 63, it is said: ''We do not believe that there was any error in the peremptory instruction of the court upon this question. The doctrine of necessity means just what it says. The right to the road must arise by reason of the absolute necessities of the claimant; and the facts upon which this right may be made to depend must establish that the existence of the road is absolutely necessary as a means of ingress and egress to the plaintiff's premises. The right cannot rest upon any ground of convenience. And we believe that, upon this issue, the most that can be said of the evidence is that it established that it would put the plaintiffs to much expense and inconvenience to establish a road leading from their premises, connecting with other public roads, that would give him an outlet; and, as said in Alley v. Carleton, 29 Tex. 78: 'A way of necessity, however, must be more than one of convenience, for if the owner of the land can use another way, he cannot claim by implication the right to pass over that of another to get to his own.' ''

The West Virginia court, in Standiford v. Goudy, 6 W. Va. l. c. 367, thus tersely speaks: ''The count in question, however, indirectly alleges or indicates that while Woods owned the two adjoining tracts of lands, he had; appendant to the one, a way over the other. This is a contradiction. The absolute owner of both tracts cannot have an easement over the one appendant or appurtenant to the other. When the owner of two tracts of lands has used a way to and from one, over the other, no matter how long, and he grants the former tract without mention of any way, unless the way is necessary to the enjoyment of the

tract granted, the mere grant of the land does not create or confer a way appendant, appurtenant or in gross.''

Washburn on Easements and Servitudes (4 Ed.), 107 thus states the rule: ''It is generally held that an easement in order to pass by implied grant, must not only be apparent and continuous, but also necessary to the reasonable use and enjoyment of the granted premises. The test of such necessity is held to be the question whether the grantee might, at a reasonable expense, procure for himself an enjoyment of a similar easement. In some cases the question of necessity seems to be overlooked, and the main stress put upon the question whether the arrangement of dominant and servient tenements is such as to show that at the time of the sale the parties intended to transfer the easement in question.''

To summarize the cases we at least have the rule of ''reasonable necessity.'' So that from the greater number of the cases outside of Missouri ''reasonable necessity'' at least, is an element in an implied easement by grant. But we are not without some rulings in this State. Our cases we take next. We should remember that we are dealing with a case wherein the easement in question is a right of way over the property of another, and that in such cases the question of reasonable necessity should plainly appear.

In the case of Barrett v. Bell, 82 Mo. l. c. 114, this court adopted the rule announced in Ogden v. Jennings, 62 N. Y. 526. We there said: ''In a well considered case in the Court of Appeals of New York, it was said: 'Easements exist as appurtenant to a grant of lands, and as arising by implication, only by reason of a necessity to the full enjoyment of the property granted. Nothing passes by implication, or as incident or appurtenant to the lands granted, except such rights, privileges and easements as are directly necessary to the proper enjoyment of the grant-

ed estate. Upon the grant of a mill, every right neces-
sary to the full and free enjoyment of the mill passes
as incident to the grant; and the necessity measures
the extent and duration of the right. . . . When the ne-
cessity ceases, the rights resulting from it cease. A
mere convenience is not sufficient to create or convey a
right or easement, or impose burthens on lands other
than those granted, as incident to the grant. In all
cases the question of necessity controls.' [Ogden v.
Jennings, 62 N. Y. 526, 531, and cases cited, pp. 531,
532.] In a valuable work on Landlord and Tenant,
the following is deduced as the rule: 'The true test
as to whether a thing is an incident or appurtenance
seems to be the propriety of relation between the prin-
cipal and adjunct which is to be ascertained by con-
sidering whether they agree in nature and quality, so
as to be capable of union without incongruity, and is
actually and directly necessary to the full enjoyment
of the property.' [Wood on Land. and Ten., sec. 213,
pp. 310, 311, and note on page 312.] As the evidence
in this case does not show the use of the kettle was a
'necessity' this fact deprives such use of the chief at-
tributes of an appurtenance. 'It was a matter of
ease and convenience only,' which having arisen by
mere consent of parties, could be destroyed by with-
drawing that consent at any time.''

We again indorse the doctrine of the Ogden case,
supra, in the later case of Mulrooney v. Obear, 171 Mo.
l. c. 619, whereat this court said: ''While the doc-
trine is broadly stated that 'the grant of a thing will
include whatever the grantor has power to convey,
which is reasonably necessary to the enjoyment of the
thing granted,' it is not always easy to determine in
a given case whether the thing under consideration is
appurtenant or not. This court in Barrett v. Bell, 82
Mo. l. c. 114, quoted with approval the decision of the
Court of Appeals of New York in Ogden v. Jennings,
62 N. Y. 526, in which it is said: 'Easements exist as

appurtenant to a grant of lands, and as arising by
implication, only by reason of a necessity to the full
enjoyment of the property granted. Nothing passes
by implication or as incident or appurtenant to the
lands granted, except such rights, privileges and ease-
ments as are directly necessary to the proper enjoy-
ment of the granted estate. . . . A mere convenience
is not sufficient to create or convey a right or easement,
or impose burthens on lands other than those granted,
as incident to the grant. In all cases the question of
necessity controls.' ''

In Field v. Mark, 125 Mo. l. c. 515, this court thus
speaks: ''Samuel Wilson conveyed each of these
three twenty-foot lots facing on Laurel street by metes
and bounds but makes no reference to any alley on the
west. It must, then, in the outset be conceded that
plaintiff's right to this strip as an alley does not arise
out of an express grant, or by necessary implication
from the recitals in the deeds under which he claims.
Nor do we think plaintiff can seriously claim that he
is entitled to this alley as a way of necessity, which
is itself an implication from the grant. That it would
be a great convenience to these lots of plaintiff to
have an alley in the rear is apparent, but it can hardly
be said to be a necessity. Certainly it is not a neces-
sity to the blacksmith shop. This twenty feet has a
street in front and alley along its whole southern side,
and the other two lots abut on the east on Laurel
street. It is not enough that this alley would be even
a great convenience; in the situation of this property
it is not in the legal sense a way of necessity.''

It should be noted that the conveyance in this case
is by metes and bounds and by platted lots, which is
the same in legal effect. Discussing the difference
between conveyances by metes and bounds and convey-
ances of a different character, in the case of Warren
v. Blake, 54 Me. l. c. 286, the court said: ''It is well

settled that an easement or right to use or occupy land, not within the lines given in a deed, may be claimed and held as a right, when the fee of the land does not pass. The question is, when and how far does that right become vested under such a deed? A distinction is made between a deed conveying in terms a particular house, or messuage or farm, known by a certain name, without defined limits, and a deed conveying a specific piece of land, carved out of a large piece, held by the grantors, and exactly described by metes and bounds. In the former case, where the grant is by name and not bounds, many things will pass which have been used with the principal thing, as parcel of the granted premises, which would not pass under a grant of a piece of land by metes and bounds.'' In Grant v. Chase, 17 Mass. 443, l. c. 446, it is said: ''This is a conveyance of a specific piece of land, carved out of a larger piece held by the grantor and described by metes and bounds. In such a case nothing could pass as parcel of the granted premises, but what is included within the boundaries expressed in the deed.'' Both of these cases and the doctrine thereof are cited with approval by this court in the case of Field v. Mark, 125 Mo. l. c. 515.

In the case at bar we can not hold that the right of way in question is one even of reasonable necessity. Lot 8 runs through from Salisbury street on the north to an open alley of 15 feet width on the south. Lot 8 therefore touches two public thoroughfares of the city. This alley way of 15 feet runs east and west through the entire block. In addition to this all this property on the rear of lot 8 can be and is reached over lot 9, a vacant lot, which lot 9 is a part of the property conveyed to plaintiff by the insurance company. Then further this passage way in dispute was in the first instance constructed for use in connection with lot 7 as much as it was for lot 8. It was so used for these years. It was a matter of convenience, not

necessity or reasonable necessity, to either. The rear ends of both lots were touched by this fifteen foot alley.

Whether the rule be one of absolute necessity makes no difference under the facts of this case. It is apparent that the plaintiff is seeking to hold this passageway in order to keep from establishing one over lot 9 of his own property.

To our mind the evidence fails to make a case of an implied easement, and the judgment is reversed and cause remanded with directions to the trial court to enter judgment for the defendant. All concur.