William A. HENDERSON and Leona L. Henderson, Appellants,

v.

Conjetta M. LA CAPRA, Respondent.

No. 22626.

Kansas City Court of Appeals. Missouri.

Nov. 4, 1957.

William I. Potter, Kansas City, for appellants.

James Daleo, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiffs (appellants) seek to establish an easement over that portion of a concrete driveway which is located on the property of defendant (respondent). Plaintiffs base their alleged entitlement first, on an easement by implication, and, second, by prescription. After hearing the testimony and weighing the evidence, the trial court denied an injunction and dismissed plaintiffs' petition. In the decree it was specifically found: (1) That the driveway was not a "way of necessity" as concerns the real property owned by plaintiffs; (2) that the use of the driveway has been since severance of the unity of ownership, controlled and limited by the defendant and her predecessors in title; (3) that the use of said driveway by the plaintiffs and their predecessors in title has been permissive; (4) that under the law and the evidence, plaintiffs are not entitled to an easement over the driveway by prescription, and (5) that they are not entitled to an easement by implication. Plaintiffs' motion for new trial was duly filed, overruled and this appeal perfected.

This court has jurisdiction of the appeal in an action to establish a driveway easement. Title to real estate is not directly but only collaterally involved. Article V, Sections 3 and 13, Constitution of Missouri, 2 V.A.M.S.; Gibson v. Sharp, 364 Mo. 1007, 270 S.W.2d 721; Judge v. Durham, Mo., 274 S.W.2d 247; Andres v. Todd, Mo.App., 296 S.W.2d 139; Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616.

This is an equity case and we cannot avoid the duty and responsibility placed upon us to reach our own conclusions as to the weight and value of the evidence. But, we do this with deference to the findings of the trial judge, who had the advantage of seeing, hearing and observing the witnesses in his presence. McCoy v. McCoy, 360 Mo. 199, 227 S.W.2d 698; Burnett v. Sladek, Mo.App., 251 S.W.2d 397.

Lots 12 and 13, Block 6, McKinney Heights, an addition to Kansas City, Mis-

souri, are located immediately south and east of the intersection of Mersington Avenue and Scarritt Avenue. Each lot in length is 150 feet, north and south. Lot 13 is 60 feet in width, east and west, while Lot 12 lies immediately to the east and is 50 feet wide. Plaintiffs own the south 46 feet of the two lots and an additional 7 feet, 7 inches immediately to the south, which represents one-half of a now vacated alley. Defendant owns the north 104 feet of each lot. On plaintiffs' south tract there is a three story, six apartment building. On the north tract there are two apartment buildings. All three buildings front west on Mersington Avenue. Both the north and south walls of plaintiffs' building are irregular. On the south its distance from the property line, that is, the center of the vacated alley, varies from 6.61 to 8.54 feet. On the north, the variation is from 6.98 to 9.06 feet. Approximately two and a half feet east of the rear of these buildings is the west side of a concrete driveway, approximately 7 feet wide, which is the subject of this controversy. This driveway extends from Scarritt Avenue, runs south across the whole of defendant's tract, nearly across plaintiffs' tract and into some old concrete pavement near the southeast corner of plaintiffs' lot. In their southeast corner plaintiffs, during the year 1951, built a garage which fronts onto this old paving and driveway. While the concrete driveway is only some 7 feet in width, approximately some 17 feet of vacant ground lies just east, and the east line of the driveway is not clearly defined by marks of usage.

In 1955, defendant placed or caused to be placed a heavy chain attached by padlocks to solid posts across this driveway. Plaintiffs assert that their footage to either the south or to the north of their building is not wide enough for a usable roadway that could provide access to the rear of their building, and that the disputed driveway is one of necessity to them. They assert secondarily, that its use as such by the occupants and owners of their building long ago ripened into an easement by pre-

scription which defendant has no right to destroy.

Twenty-two witnesses testified. Eighteen were called by plaintiffs and four by defendant. We shall review that evidence but as concisely as possible.

It appears from the testimony and from the deeds received in evidence that construction of the three apartment buildings was completed in 1917. The Agee-Block Realty and Building Company owned the land, erected the buildings and continued in ownership until December 14, 1926, when it sold to one Albert D. Black. On the same day Mr. Black conveyed the north 104 feet. Since that date there has been no unity of ownership. In none of the deeds is reference made to this driveway. Plaintiffs acquired their title on June 16, 1943. The defendant acquired hers about November 30, 1954.

Young E. Agee, nephew of the builder, testified that late in 1917 or early in 1918, he became a tenant in one of the apartments; that the concrete driveway at the rear of the buildings was then in existence, and that it was used by coal, grocery and general delivery trucks. The witness Beulah H. Davenport said that she and her family resided in one of the apartments for about one year, commencing in the spring of 1922; that the concrete driveway was then in existence, that it was the only way to get into the back of the buildings and was so used. Bessie Lee Blewitt stated that from 1922 to 1931, she lived across Scarritt Avenue north of the apartment buildings; that during all this time the driveway was used by movers and for deliveries. She never saw it closed or barricaded. Fern Bishop has been a tenant of plaintiffs and occupied one of their apartments continuously since 1939. She said the driveway was used in making coal deliveries; that it was used by the milkman, laundryman and garbage collector, and the tenants would drive their automobiles back there for washing and repair purposes. She asserted that its use was never interrupted

or restricted until in the fall of 1955, when the chain and padlocks were installed. Her husband Charles W. Bishop, gave substantially the same testimony.

Charlotte Teatz has resided on Scarritt Avenue, just to the east, for 25 years. Her testimony was that the driveway has been there all that time; that it was used by coal, trash and delivery trucks and by automobiles belonging to the tenants. She said that Mr. Thomas (who owned the north tract from 1946 to 1954) at one time placed a removable chain across the driveway, and then in the fall of 1955, defendant put in concrete posts and installed the chain and padlocks.

Homer Anderson at the time of the trial was employed as a janitor by both plaintiffs and defendant. He began such work at these apartments in 1951. He said he had seen trucks and automobiles owned by the tenants use the driveway. Lena Hayden, whose deceased husband was a janitor for plaintiffs from 1946 to 1951, said all of the service vehicles used the driveway. Arthur James was janitor for and lived in the basement of the south apartment from 1935 until December, 1939. He said that service trucks and the tenants used the driveway. He testified he and another janitor kept a removable chain across the north entrance and that such a chain was there when he started working in 1935. Plaintiffs offered additional evidence of similar and cumulative import. The plaintiff Mrs. Henderson, in addition, stated that Mr. Thomas, when he owned the property, put up a removable chain for a time.

The defense called Mr. W. R. and Eva Thomas, husband and wife, who owned defendant's property from February, 1946 to December 1, 1954. Their testimony was that they stopped all general use of the driveway by telling deliverymen and others not to use it. Mr. Thomas stated that he permitted Mr. Henderson to use the driveway when it was necessary to make repairs on his building or to "haul in something from the back he couldn't get in from the front".

Defendant Mrs. LaCapra and her son Phillip stated that at all times since Mrs. LaCapra became owner, she had forbade use of the driveway. They said that she first tried to do this by orally instructing people not to use it, and later by placing the chain and padlocks across the entrance.

A surveyor, Loren D. Wallis, was called by plaintiffs. His survey and plat of the premises setting forth exact measurements between key points was received in evidence. These indicated that the paved part of the driveway in dispute varied in width from 7 feet to 6.80 feet. His survey further showed that south of their building plaintiffs had a strip of unused land varying in width from 6.61 feet to 8.54 feet upon which a driveway could be built. On the north his measurements showed a strip 6.98 feet at its narrowest, and 9.06 feet at its widest point.

The architect, Frangkiser, said that while it was possible to build a driveway on either side of plaintiffs' building and it would be usable, still there was not sufficient width to meet usually recognized minimum standards; that all building codes require a minimum of 8 feet. He also said that the grade was uneven and that if a driveway were constructed either north or south of plaintiffs' building, a retaining wall 8 inches wide should be built.

With respect to plaintiffs' claim for an easement by prescription, the legal requirements which must be met in order to be entitled to such right are definite and well established. "The general rule is well recognized in this state that an easement may be acquired by prescription by use, for the period of 10 years, which is shown to be substantially the same as the adverse possession that will be considered sufficient to give title to real estate. It must be hostile, under a claim of right, actual, open, notorious, exclusive, and continuous. The person claiming the ease-

ment has the burden of proving by clear and positive evidence each and every element essential to its establishment. Zinser v. Lucks, 361 Mo. 671, 235 S.W.2d 844". Burnett v. Sladek, supra, 251 S.W.2d loc. cit. 399.

In Roberts v. Quisenberry, 362 Mo. 404, 242 S.W.2d 26, loc. cit. 28, it is stated: "The four essential facts for the plaintiffs to prove in order to sustain their claim to an easement by prescription are, first, user for the prescribed period; second, that the user was adverse; third, that it was under a claim of right; fourth, notice to the owner of the user, and of its character and of the claims of right".

However, the application of these intangible terms of legal definition does not quickly or simply solve our problem. The real difficulty is determining whether the proved facts are within or without the recognized legal tests. Courts are reluctant to infringe upon the rights normally incident to the absolute ownership of land. Freed v. Greathouse, 238 Mo.App. 470, 181 S.W.2d 41, 43; Jacobs v. Brewster, 354 Mo. 729, 190 S.W.2d 894 loc. cit. 900. And the burden rests upon him who asserts his entitlement to an easement by prescription. When a use is claimed by prescription, the character and extent of it is fixed and determined by the use under which it is gained. Under a prescription, an exclusive right of possession cannot be established, but only a qualified right for a particular purpose. Riggs v. City of Springfield, 344 Mo. 420, 126 S.W.2d 1144, loc. cit. 1149, 122 A.L.R. 1496.

Fairly summarizing the evidence here, we find that in 1917, a common owner of both tracts built three apartment buildings and the driveway, which "dead-ends" on plaintiffs' south property line. The tracts as now divided came under separate ownership in 1926. The undisputed evidence shows that from 1926 to 1955, when defendant placed the chain and padlocks across the entrance, the driveway was used continuously by delivery trucks and by ten-ants when repairing or washing their automobiles (except that Mr. and Mrs. Thomas, owners from 1946 to 1954, testified that they did effectively stop general use by orally instructing delivery men not to use it). There is evidence by Mr. James, janitor in 1935, less than 10 years after the ownership was divided, that a removable or easily demountable chain was placed across the north entrance, but that its regular use by service trucks and tenants continued.

This driveway has been in existence for 40 years. We can conceive of no reason or purpose for its original construction except those uses to which it has been put during these many years, namely, to provide a driveway, not for general public use, but rather restricted to those tenants, movers, servicemen and repairmen who, in the proper discharge of their business, needed a way of approach to the rear of these apartment buildings. Defendant contends that the erection of the demountable chain in 1935 was proof of or at least impelling evidence that the use was only permissive. We prefer to follow the reasoning of the Supreme Court in Chapman v. Schearf, 360 Mo. 551, 229 S.W.2d 552, loc. cit. 555: "If a way acquired by use, 'although well marked and defined, is restricted, during the time required for the establishment of the right, to a use and enjoyment thereof with bars or gates across it, the right acquired will be restricted to the same extent.' Rogerson v. Shepherd, 33 W.Va. 307, 10 S.E. 632, 636; Faulkner v. Hook, supra [300 Mo. 135, 254 S.W. 48]; Brookshire v. Harp, 186 Ky. 217, 216 S.W. 379. (Under this view of the law, the maintenance of the gates is no negation of the easement. Faulkner v. Hook, supra, and cases therein cited.) It has been said even a *dedication* may be for a partial use. Washburn's Easements and Servitudes, 4th Ed., Par. 5, p. 214".

And as said by Judge Douglas in Riggs v. City of Springfield, 344 Mo. 420, 126 S.W.2d 1144, loc. cit. 1149, 122 A.L.R. 1496: "Necessarily, therefore, when a way

is claimed by prescription, the character and extent of it is fixed and determined by the use under which it is gained". We believe plaintiffs here have met the requirements of easement by prescription. First, the use for the limited purposes involved was for the prescribed period; that is, more than 10 years after 1926, when divided ownership began. Second, the use was adverse. Third, it was under a claim of right, and fourth, the owners of the servient estate had notice of the character of the use and of the claims to those uses as a matter of right.

Even though what we have already said is decisive of this case, we prefer to pass on the other question presented, namely, plaintiffs' claim to an easement by implication, based upon a way of necessity.

■ The generally accepted and approved rule on this proposition is well stated and abundant authorities cited in Schnider v. M. E. H. Realty Inv. Co., 239 Mo. App. 546, 193˙ S.W.2d 69, loc. cit. 73–74. "All authorities agree that no implication of a grant of an easement arises from proof that the easement will be convenient in the occupation or use of the land granted—the foundation of the easement must be *necessity* and not *convenience*. 19 C.J. § 111, p. 919; 28 C.J.S. Easements § 35; Mahnken v. Gillespie, supra, 329 Mo. [51], loc. cit. 60, 61, 43 S.W.2d 797 [loc. cit.]; Bussmeyer v. Jablonsky, supra, [241 Mo. 681, 145 S.W. 772, 39 L.R.A.,N.S., 549].

"In the Bussmeyer case, supra, the Supreme Court quoted with approval the holding of the New York Court of Appeals in the case of Ogden v. Jennings, 62 N.Y. 526, wherein the court said: ' "Easements exist as appurtenant to a grant of lands, and as arising by implication, only by reason of a necessity to the full enjoyment of the property granted. Nothing passes by implication or as incident or appurtenant to the lands granted, except such rights, privileges, and easements as are *directly necessary* to the proper enjoyment of the granted estate. * * * and the necessity measures the extent and duration of the right. When the necessity ceases, the rights resulting from it cease. * * *. A *mere convenience* is not sufficient to create or convey a right or easement, or impose burdens on land other than those granted, as incidents to the grant. In all cases the question of *necessity* controls." ' (241 Mo. 681, 145 S.W. 778.) (Italics ours.) * * * The law does not favor implication easements. Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must clearly appear in order to sustain such an easement. 28 C.J.S. Easements § 30, pp. 686, 687, and cases cited".

■ As tried below and as it appears here, resolving this issue depends upon whether use of this driveway was *necessary* in order for plaintiffs to enjoy and utilize their property. It apparently was tacitly conceded below and we will judicially note, that an entryway for motor vehices to the rear of an apartment house building is not only conducive to good management, but is necessary and essential to efficient operation.

■ Defendant asserted plaintiffs could build a usable, functioning driveway either to the north or south of their apartment building. Plaintiffs stoutly denied that it could be done. Plaintiffs are not entitled to the easement as a way of necessity if they can provide a substitute way on their own land. And this is true even if the substituted way is less suitable, quite inconvenient and involves substantial cash outlay. Plaintiffs must build such a new driveway if it is possible to do so, and thereby provide a reasonably usable entryway to the rear of their premises. We think they could do so if the narrowest point between their building wall and their property line to the north or to the south were wide enough for a driveway. Otherwise, they could not do so.

The evidence, undenied and uncontroverted, is that these distances were 6.61 feet on

the south and 6.98 feet on the north. It was undisputed that building codes require 8 feet as a minimum. The architect, Frangkiser, testified that if a driveway were built so close to the house, a retaining wall, 8 inches wide, should first be installed. This reduces the width on the south side to less than 6 feet and on the north side to less than 6½ feet.

Can it be fairly concluded that a driveway less than 6½ feet in width, one side of which abuts a brick building, would provide a reasonably practical and usable entryway for a moving van, service trucks, or even passenger automobiles? We believe not. It might be urged that the driveway in dispute is only seven feet and in some places actually only 6 feet, 10 inches in width. But its west edge is 2½ feet away from the apartment building and its east edge abuts vacant ground. A truck driver could negotiate such a driveway with much more sureness, serenity and safety than he could one only 8 inches narrower, but bounded on one side by the wall of an apartment building, and on the other side by the property line of a watchful neighbor, zealously guarding that property line against trespass, either willful or accidental.

We have due deference for the opinion and conclusions reached by the trial judge. We simply, after examination of this record de novo, arrive at different conclusions.

The equities of this case are with the plaintiffs. They must use this driveway or be without access to the rear of their building. This particular driveway has served that purpose and filled that need for 40 years. We believe it should continue to do so.

The judgment is reversed and the cause remanded with directions that the trial court: 1. Enter judgment decreeing that plaintiffs have an easement by both prescription and as a way of necessity to use the driveway herein, but limited in accordance with this opinion. 2. Issue an injunction and restraining order, requiring defendant to: (a) Immediately remove any padlocks now attached to a chain and posts, barring entry or travel on the driveway described herein, but permitting defendant to retain the posts and chain at the entrance, providing the chain is merely latched to the posts and is not locked or otherwise securely fastened. (b) Shall not interfere with the use of said driveway by operators of delivery or service trucks or by the occupants of plaintiffs' apartment building, again all in conformity with this opinion.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinon of MAUGHMER, C., is adopted as the opinion of the court. All concur.