TILLIE SCHNIDER v. M. E. H. REALTY INVESTMENT CO., A CORPORATION. —193 S. W. (2d) 69.

Kansas City Court of Appeals. January 14, 1946.

*Maurice H. Winger* and *George J. Winger* for appellant.

*Winger, Reeder & Barker* of counsel.

548

[redacted]

*Schultz & Bodney* for plaintiff-respondent.

[redacted]

CAVE, J.—In this suit respondent (hereinafter called "plaintiff") seeks to enjoin the maintenance by appellant (hereinafter called "defendant" of downspouts which overhang plaintiff's lot and connections from such downspouts to a sewer over and across plaintiff's real estate. By cross-petition defendant seeks to enjoin plaintiff from interfering with the maintenance of such downspouts and sewer connections. After trial the court entered judgment permanently enjoining and restraining defendant from maintaining the two downspouts located on plaintiff's land and attached to the east wall of defendant's building; from using the sewer on plaintiff's land in any manner; from further permitting water from its roof to run onto plaintiff's land; and ordered that defendant remove said downspouts and disconnect the same from plaintiff's sewer within 60 days. From this judgment defendant perfected its appeal.

Most of the facts are stipulated and agreed to. They are to the effect that plaintiff and defendant are the owners of adjoining tracts of land fronting on the north side of 63rd Street, between The Paseo and Tracy Avenue, in Kansas City, Missouri. Plaintiff's tract being the west one-half of Lot 10 and all of Lot 11 in Southmoor addition, and defendant's tract being all of Lots 12, 13, 14 and 15 in the same addition and adjoining plaintiff's tract on the west. All the lots have a depth of 125 feet; plaintiff's property fronts 37½ feet on 63rd Street and defendant's frontage is approximately 101 feet. Bothtracts of land are improved with one-story business buildings which adjoin each other; but defendant's building extends approximately 60 feet further north than does plaintiff's building.

The basis of this controversy is the fact that the defendant maintains two downspouts attached to the east wall of its building on that

portion of the wall which extends northward and beyong the rear wall of plaintiff's building. Defendant's east wall is built flush with the east line of its Lot 12 so that the downspouts extend over and upon plaintiff's land (Lot 11) for a distance of 10 inches. The downspouts were installed and are maintained for the purpose of carrying water from the roof of defendant's building to a sewer located on plaintiff's property; this sewer was constructed by the original owner of both tracts of land and connects with the city sewer in 63rd Street.

All of the lots now owned by plaintiff and defendant were formerly owned by Anschel Schnider and Lottie Schnider, his wife. Anschel Schnider built all the buildings situated on this property; the building located on plaintiff's tract having been first constructed and that on defendant's tract subsequently erected. Both buildings were built prior to July, 1927. On the last mentioned date the downspouts in controversy were upon what is now defendant's building, overhanging plaintiff's property, and they were being used and maintained by Anschel Schneider and his wife and were connected with the aforementioned sewer; that said downspouts and connections with the sewer were open and apparent and have been ever since maintained by the said Schneiders and subsequent grantees without any alteration or change. Plaintiff admitted she knew the downspouts had been there since the second building was erected some time prior to 1927.

In March, 1927, Schnider and his wife executed their deed of trust conveying the lots now owned by defendant to secure a certain promissory note in the sum of $19,000; in August, 1934, this deed of trust was foreclosed and the lots purchased by one Mary Ella Hagerman for the sum of $12,500, and she received a proper trustee's deed; in December, 1935, she, by warranty deed, conveyed said lots to the defendant. Anschel Schnider and his wife continued to own plaintiff's tract until January, 1934, when they conveyed both lots, by warranty deed ,to Jake Hyman and wife; in February, 1943, the Hymans, by warranty deed, conveyed the property to plaintiff. None of these deeds made any reference to the downspouts and sewer or any easement therein. Mrs. Hyman and plaintiff are daughters of Mr. and Mrs. Schnider. Other evidence will be referred to in the discussion to follow.

The principal question to be determined is whether defendant is entitled to an *implied easement* upon plaintiff's land for the maintenance of the downspouts and sewer connections. Defendant's contention is that when one owns two adjoining tracts of land and employs a part thereof so that the other part derives a continuous, permanent and apparent benefit and conveys the *quasi*-dominant part an *easement is implied* in favor of the portion conveyed if it is *reasonably necessary* to the beneficial enjoyment thereof. That by reason of the manner of the construction of the buildings upon plaintiff's and defendant's tracts, the maintenance of the downspouts and

sewer connections upon plaintiff's tract created a continuous, permanent and apparent benefit to defendant's tract *reasonably necessary* to its beneficial enjoyment, and the court erred in not so finding.

. Plaintiff contends that the rule of *"strict necessity* has been adopted in this state and has been consistently applied by our courts in determining the rights of an adjoining landowner in facilities at one time used and enjoyed by him; and this is so without regard to length of user or any other consideration."

We now consider additional evidence concerning the *necessity* of defendant to have the continued use of the downspouts and sewer connections.

When Anschel Schnider built the *first building, which is on plaintiff's land,* he constructed a sewer along the rear or north end of that building from the west to the east, thence south along the driveway on the east side of that building and connected with the city sewer in 63rd Street. When he constructed the *second building,* or the one on defendant's property, he established a sewer along the north end of that building to the northeast corner, thence south along the east side of that building, *but on what is now plaintiff's land,* and connected it with the first above-mentioned sewer at the northwest corner of plaintiff's building, and located the two downspouts in dispute on the east side of the new building extending north of plaintiff's building for the purpose of draining the water from the roof into the sewer and out into the city sewer in 63rd Street.

There is evidence that there is another sewer located under defendant's building and which leads directly out into the sewer in 63rd Street. The exact location of this sewer is not made clear by the testimony, but it is located on defendant's property. Defendants asserts it does not know where that sewer is located and has made no search to locate it. The expense of connecting these downspouts with that sewer is not disclosed.

Paul Atkins, called by defendant as its witness, testified that he was a contractor and was engaged by various real estate companies for the maintenance of properties owned and managed by such companies and was familiar with the properties involved in this controversy. He described the construction of the buildings, downspouts and sewer, and testified that the roof of defendant's building, as constructed, drained the water to the east side thereof and into the gutter which leads into these downspouts; that these downspouts could be removed from plaintiff's land and give the drainage necessary in two ways: First, by constructing a sewer on the west side of defendant's property and changing the elevation of the roof so that the drainage would be to the west, and that the cost of changing the roof alone would be at least $2,000, but gave no estimate of the expense of locating the downspouts and sewer on the west side of the defendant's building; the second method would be to locate these downspouts on the inside

of defendant's east wall and construct a sewer underneath its building draining into the city sewer in 63rd street. He said this plan would be hardly practical because of concrete floors and three building walls in defendant's building, . . . it would cost a great amount to do that. . . . It would be a very expensive process and the tenant would lose the use of the building while that was being done." He also said he had no knowledge of the location of the present sewer under defendant's building and gave no estimate of the expense of connecting with that drain.

There is evidence to the effect that the natural slope of the land is from the northwest corner of the whole tract toward the south and southeast. Plaintiff complains that the downspouts overflow when there is a heavy rain, causing the water to run down against the north wall of her building. But we do not consider such evidence of much probative value in determining whether the defendant has a permanent easement over plaintiff's property for the use of the downspouts and sewer.

The briefs indicate that the sharpest point of conflict, on the law and the evidence, is whether there is *sufficient necessity,* together with other elements, to vest in defendant a permanent easement over plaintiff's property for the maintenance and use of the two downspouts and the sewer. Defendant contends the rule of law to be that only *reasonable necessity* for the use must be proved, while plaintiff asserts the Missouri rule is that *strict necessity* must be shown. ·

It must be kept in mind that we are not considering an easement created by oral or written agreement or by prescription. Cases discussing such easements are of little value in arriving at a proper conclusion in this case.

We are considering the question of whether an *easement by implication* was created upon the severance of the unity of ownership in the above described lots. In 17 Am. Jur., p. 948, Sec. 34, the various elements which are essential to create an *easement by implication* upon the severance of the unity of ownership in an estate are announced as follows: "(1) A separation of the title; (2) necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and (3) necessity that the easement be essential to the beneficial enjoyment of the land granted or retained. Another essential is sometimes added to· these—namely, that the servitude be continuous,, as distinguished from temporary or occasional." [See, also, 9 R. C. L., Sec. 23, p. 757; 58 A. L. R., Note II, p. 824; 14 Cyc., p. 1168; 1 Thompson, Sec. 405, pp. 661-2, and cases cited.]

There is no dispute in this case about the "separation of title" of the original owner, nor that the construction of the roof, the downspouts and sewer had the appearance of being permanent and that

plaintiff had knowledge of such construction from the time the building and downspouts were erected. So there remains for consideration the third (3) element—*necessity*.

The weight of authority seems to be that the *necessity* requisite to the creation of an *easement by implication* is not an *absolute necessity*, but that a *reasonable necessity suffices;* although there is authority to the contrary. For authorities supporting the doctrine of *reasonable necessity*, see 17 Am. Jur., Sec. 79, p. 985; Tiffany on Real Property (2 Ed.), Vol. 2, pp. 1284-1285; Jones on Easements, pp. 130-131; 28 C. J. S. Easements, p. 691, Sec. 33; Fitzpatrick v. Mik, 24 Mo. App. 435.; Greisinger v. Klinhardt, 321 Mo. 186, 193; Bussmeyer v. Jablonsky, 241 Mo. 681; Mahnken v. Gillespie, 329 Mo. 51, 59, et seq.; 43 S. W. (2d) 797. The last cited case is the most recent decision of our Supreme Court on this question which we have found or are referred to. There are Missouri decisions which seem to hold to the theory that the necessity must be a *strict necessity*. Those cases are: Auxier v. Horn, 213 S. W. 100; Seested v. Applegate, 26 S. W. (2d) 796, and Bales v. Butts, 309 Mo. 142.

In the Greisinger case, *supra,* the court was discussing the question of an *implied easement,* and said (192-3) : ". . . that the easement charged upon the servient estate must be openly and visibly attached at the time of the conveyance of the portion first granted. It is not a question of prescription, but a question of the apparent attachment for the enjoyment of the property granted. It must be *reasonably necessary* for the enjoyment of the dominant estate. It must be apparent at the time of the severance by the original owner." (Italics ours.) The court arrived at that conclusion after considering, among others, the case of Bussmeyer v. Jablonsky, *supra.* In the Mahnken v. Gillispie case, *supra,* the court considered the same question and discussed the opinion in the Bussmeyer case, and concluded (59) : "The use which it is claimed results in the easement must be of a class which is in its nature continuous and apparent, and, what is important here, must be at least *reasonably necessary* to the enjoyment and use of the property claiming the benefit." Neither of those cases refer to nor discuss the opinions in the Auxier v. Horn, Seested v. Applegate, and Bales v. Butts, *supra,* although the Seested and Bales cases cite the Bussmeyer case as authority for the proposition that *strict necessity* is required. We do not so construe the opinion in the Bussmeyer case. It is frequently cited in various textbooks as authority for the proposition that *reasonable necessity* is the Missouri rule.

But whether our rule is one of *strict necessity* or *reasonable necessity,* we are of the opinion that the trial court correctly found that no *sufficient necessity* was shown by the evidence in this case because it is undisputed that defendant can, by changing the elevation of the roof of its building, drain the water into downspouts on the west side

of its own building and by installing a drain pipe on its own property carry the water into the city sewer in 63rd Street. This change can be made for approximately $2,000. The evidence does not disclose the present market value of the defendant's building, but in 1927 it was mortgaged for $19,000 and sold at foreclosure in 1934, in the very depth of the recent depression, for $12,500.

There is also evidence that defendant can construct a drain pipe or sewer under its own building and on its own property for carrying away the water from the roof; also, that there is already a sewer on defendant's property and under its building which drains into the city sewer in 63rd Street. While defendant says it does not know just where that sewer is located, it has made no effort, so far as the record discloses, to ascertain the location.

Where a party can, at reasonable expense, secure, over his own property, the relief which he seeks to impress upon another's property by an implied easement, the essential element of necessity is missing and his claim must fail. [Bales v. Butts, *supra*; Bussmeyer v. Jablonsky, *supra*; Seested v. Applegate, *supra*; Warren v. Blake, 54 Me. 276; Dolliff v. Boston & M. R. Co., 68 Me. 173; Johnson v. Jordan, 2 Metc. (Mass) 234; Thayer v. Payne, 2 Cush. (Mass.) 327; Carbrey v. Willis, 7 Allen (Mass.) 364, 83 Am. Del. 688; Randall v. M'Laughlin, 10 Allen (Mass.) 366; Smith v. Blanpied, 62 N. H. 652; Scott v. Beutel, 23 Gratt. (Va.) 1; Berlin v. Robbins, 180 Wash. 176.]

All authorities agree that no implication of a grant of an easement arises from proof that the easement will be convenient in the occupation or use of the land granted—the foundation of the easement must be *necesesity* and not *convenience*. [19 C. J., Sec. 111, p. 919; Mahnken v. Gillespie, *supra*, 1. c. 60, 61; Bussmeyer v. Jablonsky, *supra*.]

In the Bussmeyer case, *supra*, the Supreme Court quoted with approval the holding of the New York Court of Appeals in the case of Ogden v. Jennings, 62 N. Y. 526, wherein the court said: " 'Easements exist as appurtenant to a grant of lands, and as arising by implication, only by reason of a necessity to the full enjoyment of the property granted. Nothing passes by implication, or as incident or appurtenant to the lands granted, except such rights, privileges and easements as are *directly necessary* to the proper enjoyment of the granted estate . . . and the necessity measures the extent and duration of the right. . . . When the necessity ceases, the rights resulting from it cease. A *mere convenience* is not sufficient to create or convey a right or easement, or impose burthens on land other than those granted, as incident to the grant. In all cases the question of *necessity* controls.' " (Italics ours.) This same language was quoted with approval by the Supreme Court in Barrett v. Bell, 82 Mo. l. c. 114, and Mulrooney v. Obear, 171 Mo. l. c. 619.

The burden was upon the defendant to show, as against the terms of its predecessor's deed, that it is the owner of the easement in question; and its proof must be sufficient to establish all the elements necessary to create an easement by implication, the effect of which is to modify or change the plain terms and provisions of warranty deeds. For that reason, the proof should be clear and cogent.

The law does not favor implication easements. Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must *clearly* appear in order to sustain such an easement. [28 C. J. S., Sec. 30, pp. 686-7, and cases cited.]

In Vol. V., Restatement of The Law, p. 2979, the rule is stated as follows:

"In construing conveyances doubts are resolved in favor of the conveyee and against the conveyor. To a greater extent than is true of the conveyee the conveyor controls both the language of the conveyance and the circumstances under which it is made and has the power to make the language of the conveyance express the intention of the parties. To the extent to which this is true his failure to make it do so is held to operate to his disadvantage rather than to the disadvantage of the conveyee. What is true in construing the language of a conveyance is likewise true in drawing inferences from the circumstances under which the conveyance was made. Accordingly, circumstances which may be sufficient to imply the creation of an easement in favor of a conveyee may not be sufficient to imply the creation of one in favor of the conveyor."

We conclude that the trial court was correct in finding ". . . that there is no necessity by which defendant is entitled to maintain the two downspouts in evidence on plaintiff's land and connect it to plaintiff's sewer as there are other means by which the defendant can install downspouts on its property and connect the same to the public sewer in the street in front of its property."

It is also contended by appellant (defendant) that the court erred in admitting in evidence certain party wall agreements entered into between defendant and the Hymans, but we have not taken such instruments into consideration in arriving at our conclusion and need not discuss the question of their admissibility.

It follows that the judgment should be affirmed. It is so ordered. All concur.