Sudie M. CAUSEY, Individually, and as widow of the deceased, Calvin E. Causey, (Plaintiff) Appellant,

v.

Alvertis WILLIAMS and Henrietta Williams, his wife, (Defendants) Respondents.

No. 31825.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

Rehearing Denied Dec. 16, 1965.

Application to Transfer Denied Feb. 14, 1966.

Harry J. Stadin, J. Raymond Dyer, St. Louis, for appellant.

Max Sigoloff, St. Louis, for respondents.

RUDDY, Judge.

Plaintiffs contend they have an easement over that portion of an alleged concrete common driveway located on the property of defendants and through this action they seek to have a mandatory injunction requiring defendants to remove a concrete dividing curb and woven wire fence which have been placed on said driveway by defendants and which plaintiffs claim are obstructing their use of said driveway. Plaintiffs seek to establish an easement by implication over the entire portion of the alleged concrete common driveway located on the property of defendants. In addition, they seek actual and punitive damages against the defendants. The trial court denied the mandatory injunction and the other relief sought by plaintiffs and dismissed plaintiffs' petition. Plaintiffs have appealed from this decree and judgment.

Plaintiffs are the owners of improved real property known as 1459 Laclede Station Road in the city of Richmond Heights, Missouri. Their property, which shall be referred to hereinafter as Lot A, is the north half of Lot 67 of Rannell's Home Farm Subdivision and consists of a tract of land fronting 50 feet on the west line of Laclede Station Road with a depth westwardly of 120 feet. The north line of said Lot A is parallel to and 100 feet south of the south line of Hicks Avenue, which is the first intersecting street north of said lot. Defendants are the owners of the south half of said Lot 67, together with improvements thereon, known as No. 1463 Laclede Station Road and said lot fronts 50 feet on the west line of Laclede Station Road with a depth westwardly of 120 feet. Defendants' property will be referred to as Lot B.

Defendants' lot is improved with a brick residence 37 feet wide and 28 feet deep, set back 35 feet from the east line of said lot and 7.01 feet from the north line thereof. Plaintiffs' Lot A consists of a similar improvement and the brick residence on said lot of plaintiffs is 7 feet from the south line of said lot. Between plaintiffs' residence and defendants' residence is a concrete driveway running west from said Laclede Station Road to the rear of the two residences and approximately 40 feet beyond. The driveway occupies the entire space between the two residences.

The evidence shows that Lots A and B were originally owned by the St. Louis County Realty Company. At the time of their ownership there were no improvements on either of said lots. About May of 1959 the St. Louis County Realty Company commenced the construction of two houses, one on Lot B for the defendants herein and one on Lot A for Margaret M. Brown. In the construction of said houses the St. Louis County Realty Company built the driveway referred to between the two houses. There was no right-of-way by which either defendants or Margaret M. Brown could get into their lots from the rear.

On October 9, 1959, the St. Louis County Realty Company conveyed Lot B by warranty deed to the defendants herein. Said warranty deed contained the following reservation: "Subject to reservation of St. Louis County Realty Co., its successor and assigns for driveway purposes over the

North one (1) foot of the above described property, for the use and benefit of the property adjoining on the North."

On the same day, namely, October 9, 1959, the St. Louis County Realty Company conveyed Lot A by warranty deed to Margaret M. Brown. Said warranty deed contained the following reservation: "Subject to reservation of St. Louis County Realty Co., its successors and assigns for driveway purposes over the South one (1) foot of the above described property, for the use and benefit of the property adjoining on the South." On April 27, 1960, Margaret M. Brown conveyed Lot A by warranty deed to Calvin E. Causey and Sudie M. Causey, his wife, the plaintiffs herein. Said warranty deed conveyed said Lot A "subject to restrictions, conditions, easements, reservations etc. now of record, if any."

The warranty deed executed by the St. Louis County Realty Company conveying Lot A to Margaret M. Brown was recorded in the office of the Recorder of Deeds, County of St. Louis, Missouri, on October 13, 1959, at 11:37 A.M., and the warranty deed executed by the St. Louis County Realty Company conveying Lot B to defendants herein was recorded in the office of the Recorder of Deeds, St. Louis County, Missouri, on October 13, 1959, at 11:39 A.M. We mention the time of these recordings because of a point raised by plaintiffs which we will discuss later.

We summarize the evidence we think pertinent to the contention of plaintiffs. We pause to comment that the record in this case is extensive and contains much testimony of witnesses, offered by plaintiffs, that we find is immaterial and irrelevant to the issue and contention sought to be established by plaintiffs. Thus, we limit our summation to the relevant and pertinent evidence that relates to the contention of plaintiffs, namely, that they have an easement by implication over the entire portion of the alleged common driveway located on the property of defendants.

One of the defendants, Alvertis Williams, called as a witness by plaintiffs, testified that he purchased Lot B and the improvements thereon in 1959 and that thereafter he and his wife moved into the property. At the time he moved into the property Margaret M. Brown resided in and owned the house to the north of his property, which house was an improvement on Lot A. He said he did not use that part of the driveway north of his property line and on the property owned by Mrs. Brown and stated that he only used the driveway on his side, namely, to the south of his north line. He said there was no mark or line on the driveway that indicated his northern boundary or the southern boundary of Lot A. He remembered when the plaintiffs moved into the property formerly owned by Margaret M. Brown and said that he and Mr. Causey, one of the plaintiffs, undertook to extend the driveway to the rear of their respective lots. He stated there was no discussion with reference to a common use carport and that he had no idea of building a common use carport or garage with the Causeys. Witness engaged Max Platzelman to bring the material for the extended driveway and paid him his (Williams) portion of the cost, which he thought was "approximately $100 or better." At the same time that witness extended the driveway to the rear of his house he built a concrete patio or slab on his property at the back of his house, which he said was built for the benefit of the family. He further stated that he used the front portion of his driveway to park his car and did not use the portion to the rear of his house because he reserved that as a playground for the children.

In August of 1962 he (Williams) built a fence on his property and, as he described it, a dividing or separating curb, which he said was approximately 6 inches or 9 inches in width and about 6 to 9 inches in height. He engaged a contractor to do this work. He said his purpose in building the fence and curb was to "be able to have access to my property without coming in

conflict with anyone else." The fence and the curb were built one foot south of his north line, which limited his driveway to "six feet between the curb and the house." Building the fence and curb at this location left the width of plaintiffs' driveway at 8 feet, which included the southern 7 feet of plaintiffs' lot and the northern one foot of defendants' lot. Witness further testified that he and Mrs. Margaret Brown bought the 50 foot lots of vacant ground and had the St. Louis County Realty Company build their residences and the adjoining driveways between the residences.

On cross examination Alvertis Williams testified that plaintiffs and their visitors would block defendants' portion of the driveway and prevented defendants from using the driveway. Witness further testified that before he built the fence and concrete curb he consulted the Building Commissioner of his area and the St. Louis County Realty Company and was advised that he was within his rights in building the fence and curb as long as he placed them on his property.

Allan R. Hoffman, another witness produced by plaintiffs, testified that he was President of the St. Louis County Realty Company and that Lots A and B were originally owned by the company. He said that the defendants and Margaret M. Brown were friends and came into the company's office together and that defendants and Margaret M. Brown simultaneously entered into contracts to purchase the respective tracts of land; defendants to purchase Lot B and Margaret M. Brown to purchase Lot A. He further testified that the two residences were constructed pursuant to orders received from the respective purchasers and that the building of the improvements and the completion of the purchase arrangement were reasonably within the same time. He said that his company built the two residences. He testified that "In the contract we first entered into it was agreed between all parties that they would each have a one foot easement, and it was agreed in the con-

tract and naturally it was placed in the deed when we recorded the deed." He said that the certificates of title of the respective properties said nothing about a reservation or grant of a one foot easement but said that this was not unusual in the certificates of title. He said his company built the driveway, that is, had a contractor build it, and as far as he knew there was nothing to indicate the center of the driveway. However, he said "Actually there were two driveways. They may have poured it at the same time and may not have shown a definite division but it was poured as two driveways." Several times he said that in building the improvements that there were two separate and distinct houses and two separate and distinct driveways. He admitted that he told Mr. Williams that it was all right to build the fence and the curbing as long as he left the one foot easement clear and said that the building of the fence and curbing did not cut down the space available to the plaintiffs because they never had any more than a one foot easement. He added, "from the date we started with the Browns and Williams there was never any question, everybody was happy."

Margaret M. Brown, produced as a witness by plaintiffs, testified that she purchased Lot A on October 9, 1959, and had the improvements built thereon. She said that in April of 1960 she sold the house and lot to the plaintiffs. She gave the following testimony concerning the use of the driveway: "Q. * * * Now, were you given to understand when you bought this property there was a mutual use of this driveway? A. There was not mutual use. * * A. No, there was no mutual use. Q. Did you use the driveway? A. I used half of the driveway. Q. Did Mr. Williams use the driveway? A. He used the other half. Q. You are talking about the north half? A. I am talking about half adjoining my property, I was using that half and the strip down the middle was used interchangeably in order to give room to get out of the cars." She said she had no difficulty turning into her driveway from Laclede Station Road.

Max Platzelman, a witness for plaintiffs, was the general contractor and builder of the two residences built on Lots A and B. He said he was engaged to build these houses by the St. Louis County Realty Company. In addition to building the two houses, he also built the driveway between the two houses. He thought that a black line, which he described as an expansion joint or bind joint, ran between the two buildings and separated the driveways. However, he admitted he could be mistaken about it. He denied building the driveway that extended to the rear of the two houses, but admitted he procured and had delivered the material for the extended driveways.

Calvin E. Causey, one of the plaintiffs, (who has died since the trial in the Circuit Court) testified that he and his wife bought the property at 1459 Laclede Station Road (Lot A) from Margaret M. Brown on April 27, 1960. Sylvester Burke, employed by P. C. Robinson Real Estate Company, acted as agent for the plaintiffs in the purchase of the property. Witness stated that before purchasing the property he looked at it and at that time was interested in finding a house with a garage. At the time of the purchase he had a 1956 Cadillac car. He observed the driveway connected to the house was, as he put it, a common use driveway built for both houses and saw no obstruction on the driveway at that time and no marks or lines indicating a division of the driveway. He observed Mr. Williams drive up the center of the driveway. After witness and his wife purchased the property Mrs. Williams visited them and stated that defendants and Mrs. Brown made an agreement to build an extension onto the original driveway and she stated that the original driveway was a common use driveway and was built for the use of both parties. A guest of witness, namely, Gus Tabor, was present on this occasion. Subsequently, Mr. Williams approached the witness with the suggestion that they build a joint carport. This idea was subsequently abandoned. However, the construction of the driveway to the rear of the houses

was completed and witness said he paid his share of the cost of completing the extended driveway. He said that in using the driveway he "pulled right up the center" and both he and Mr. Williams followed that practice.

At the time witness testified he said he owned a 1961 Cadillac Coupe. At the time of his testimony there was introduced in evidence by plaintiffs literature from the Cadillac manufacturer which showed the overall width of the Cadillac car to be 79.7 inches. Witness further testified he had "great difficulty" getting into the rear portion of his lot. On one occasion he damaged his automobile. On other occasions both he and his guests have hit the curb erected by defendants and complained that he had additional trouble when snow and ice were on the ground. He said that his wife is unable to drive the car between the fence and the house. Witness admitted that the fence and curb were placed on the side of the driveway owned by the defendants and that the driveway remaining on his side was 8 feet in width. He further admitted that he read the warranty deed by which he acquired title and had read the provision that said the property was "subject to restrictions, conditions, easements, reservations, etc. now of record, if any." He had never met the defendants before he and his wife purchased the property and said the deal was closed at the real estate office. Mrs. Brown was not present at the time and he made inquiry of the real estate agent, Sylvester Burke, about the driveway. He testified that Mr. Williams came to his house one day and suggested that both tell their guests in the future to park on the street and not to use the driveway. Plaintiff said he did not agree to that suggestion and that Mr. Williams thereafter stormed out of the house. Following this, the fence and dividing curb were built. He said before the curb and fence were built he did not restrict Mr. Williams to the use of the one foot easement of the driveway and Mr. Williams did not restrict him to the one foot easement.

Augustus Tabor, a witness called by plaintiffs, said he was present when Mrs. Williams came over to talk to Mr. and Mrs. Causey. He said Mrs. Williams told the Causeys "the driveway was for both houses" and said "they were going to extend the driveway" and asked them to join in the extension.

The last witness called by plaintiffs was Sylvester Burke, who represented the plaintiffs in the purchase of their property. He told plaintiffs the driveway was a connected drive between the two houses and "in order to get into the back one had to go a little on the other side and the other had to go a little on the other side."

Alvertis Williams, one of the defendants, testified in his behalf that he could not get in or out of the driveway because plaintiffs' visitors parked in the middle of the driveway. He said this happened repeatedly and he asked plaintiff to have his visitors park on the street. Mr. Causey refused to accede to this request. He said he never made a statement to Mr. Causey that the driveway was a common use driveway. He said that the concrete curb he built is one foot and one inch south of the center of the concrete drive, which means it was one foot one inch south of the north line of his property. He said that the curbing and the fence he built is entirely on his land. He further testified that he was in the process of extending the driveway to the rear of his house when plaintiffs purchased their property.

Henrietta Williams, one of the defendants, testified she made no statement to the Causeys that the driveway was a common use driveway.

The trial court in its decree found, inter alia, that plaintiffs did not have an easement by implication over the portion of defendants' driveway located on the north 7.01 feet of their Lot B. The court further found that the "defendants were chargeable with only one (1) foot of their driveway for the use and benefit of the property owners adjoining on the north" and that "the

plaintiffs were also chargeable with only one (1) foot of their driveway for the use and benefit of the property owners adjoining on the south." The court further found "that neither the plaintiffs nor the defendants are entitled to any greater rights to the property owned by them respectively than one (1) foot on each others driveway for driveway purposes, as provided in the deeds duly recorded in the Office of the Recorder of Deeds in the County of St. Louis, Missouri." The court further found that the plaintiffs were chargeable with knowledge of the reservation "with respect to the use by them of the one (1) foot limitation of the driveway reservation running over Lot 'B,' the property of the defendants," and the court further found "the same limitation of one (1) foot over the driveway running over Lot 'A' belonging to the plaintiffs."

Plaintiffs in their brief have asserted numerous points. However, all of them may be summarized in the one contention that "the court below erred in finding that defendants' Lot B was 'not imposed with a 7.01 foot wide implied driveway easement running over said Lot "B," nor is said Lot "B" charged with any imposition as alleged by plaintiffs.'" Plaintiffs gave as their reason for their contention that "upon the partitioning of the two lots an implied common use driveway easement 14.01 feet wide between the two houses was created by operation of law, 7 feet of which was on plaintiffs' Lot A and 7.01 feet of which was on defendants' Lot B, * * *." Plaintiffs assert the further ground that "The 7.01 feet accorded plaintiffs' predecessor in title by operation of law superseded the one foot ineffectually reserved for Lot A by Realty Co. in its deed of Lot B to defendants."

For the moment we will omit comment on the effect of the reservation contained in the warranty deeds conveying the respective lots to defendants and to Margaret M. Brown and will direct our remarks initially to the question of whether or not plaintiffs have shown that they are entitled to an easement by implication.

■ It should be observed at the beginning that the law does not favor the implication of easements and the courts are reluctant to infringe upon the rights normally incident to the absolute ownership of land. Henderson v. La Capra, Mo.App., 307 S.W.2d 59, 63, 64; 28 C.J.S. Easements § 30, p. 686; 17A Am.Jur., Easements, § 41, p. 653.

■ In the instant case the burden rests upon the plaintiffs, who assert their right to an easement by implication, to prove all of the elements necessary to create such an easement. As said in the case of Schnider v. M. E. H. Realty Inv. Co., 239 Mo.App. 546, 193 S.W.2d 69, l. c. 73:

"The burden was upon the defendant to show, as against the terms of its predecessor's deed, that it is the owner of the easement in question; and its proof must be sufficient to establish all the elements necessary to create an easement by implication, the effect of which is to modify or change the plain terms and provisions of warranty deeds. For that reason, the proof should be clear and cogent."

■ The law with reference to the establishment of an easement by implication, which arises out of the severance of two adjoining properties, is well settled. The elements necessary to establish such an easement, as set out in the cases, may be found in the following statement from 17A Am.Jur., Easements, § 41, pp. 652 and 653:

"It is a well-settled rule that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude *at the time of the severance, is in use* and is reasonably necessary for the fair enjoyment of the other part of the estate, then upon a severance of the ownership, a grant of the right *to continue such use* arises by implication of law. This doctrine is usually called the rule

of visible easements." (Emphasis ours.)

Bussmeyer v. Jablonsky, 241 Mo. 681, 145 S.W. 772, 39 L.R.A.,N.S., 549; Di Pasco v. Prosser, 364 Mo. 1193, 274 S.W.2d 279; Schnider v. M. E. H. Realty Inv. Co., supra.

It is said that this rule of implied easements from pre-existing use upon severance of title is based upon public policy, which is favorable to the full utilization of land and the presumption that parties do not intend to render land unfit for occupancy. As a further basis, a presumption frequently invoked is that the parties contracted with a view to the condition of the property *as it actually was at the time of the transaction* and that after sale neither party has a right, without the consent of the other, to change to the detriment of the other, *a condition which openly and visibly exists.* 17A Am. Jur., Easements, § 42, p. 655; Greisinger v. Klinhardt, 321 Mo. 186, 9 S.W.2d 978.

It is also held (17A Am.Jur., Easements, § 52, pp. 660 and 661) that to create an easement by implication from pre-existing use there must be (1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of the conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance and under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement.

■ The significant factor in determining whether such an easement by implication exists is to ascertain the intention of the parties as shown by the deeds of conveyance and the general circumstances and situation with reference to the acquisition of the properties from the owner of the unity of title. The idea underlying the creation of such an easement is that the parties are presumed to have intended the grant of an easement by implication. Such a presumption can only be based on facts and

this requires a resort to the record evidence. This intention to create an easement by implication must clearly appear in the evidence. Henderson v. La Capra, supra. In order to sustain such an easement, it has been held that no grant of an easement by implication can arise where there is an express contract relating to the matter. A conveyance expressly providing for certain easements warrants an inference that no other easements are intended; but such inference will not override a clearly apparent intent to include other easements and it has been held that an express provision for an easement is immaterial on the question of implied easements. 28 C.J.S. Easements § 30, p. 687. This is particularly true where there is an implication of an easement by necessity. Where there is the need of an easement because of necessity, it may be established, even though there is an express provision for an easement which proves to be inadequate. 28 C.J.S. Easements § 34, pp. 694, 695.

■ In ascertaining the intention of the parties with reference to the establishment of an easement by implication the important element to be looked for is that referred to in the Greisinger case, supra, wherein the court said, " * * * that the easement charged upon the servient estate must be 'openly and visibly attached at the time of the conveyance of the portion first granted.' " (9 S.W.2d 1. c. 980.) The following cases hold that this is a necessary element ·to be found: Foxx v. Thompson, 358 Mo. 610, 216 S.W.2d 87; Bussmeyer v. Jablonsky, supra; Schnider v. M. E. H. Realty Inv. Co., supra.

■ When the principles of law stated above are applied to the pertinent evidentiary facts found in the record in the instant case it becomes clear that the trial court was correct in its ruling that plaintiffs did not have an easement by implication. There is not a single bit of evidence showing a condition or circumstances prior to the time of the conveyances or at the time of the conveyances of the two lots by the St. Louis County Realty Company to the defendants and Margaret M. Brown that would suggest that an easement openly and visibly existed and attached. Nor is there a scintilla of evidence to show that at the time of the conveyances of Lots B and A to the defendants and Margaret M. Brown, respectively, there was an intention to create an easement by implication over what was to become that part of defendants' driveway located on the north 7.01 feet of their property.

Alvertis Williams, one of the defendants, testified, in plaintiffs' case, he did not use that part of the driveway north of his property line and on the property owned by Mrs. Brown. He said he had no conversation with the plaintiffs wherein he said the driveway was a common use driveway. Allan R. Hoffman, President of the St. Louis County Realty Co., testified that there were two separate and distinct driveways and that his company, through a contractor, had built the two driveways and that the only easement discussed, which was later put in the warranty deeds, was the one foot easement that was agreed upon between his company and the respective purchasers. Margaret M. Brown who purchased Lot A from the St. Louis County Realty Co. said there never was any understanding regarding a mutual use of the driveway and indicated that she only used the one half of the driveway owned by her and the one foot strip down the middle in connection with the operation of her automobile.

The testimony of these witnesses belies any intention to create an easement by implication over the north 7.01 feet of the defendants' property which is the part occupied by their driveway at the time of the severance of Lot 67. The evidence in this case clearly indicates that the only easement intended was that mentioned in the respective warranty deeds from the St. Louis County Realty Co. conveying Lots A and B to Margaret M. Brown and the defendants. The trial court was correct in finding that plaintiffs did not have an ease-

ment by implication over any part of defendants' driveway.

Plaintiffs introduced in evidence two survey drawings (dated October 1, 1959) which show the location of the improvements on each lot in question. Both drawings show that the brick residence of plaintiffs is 7 feet north of the south line of Lot A and that the brick residence of defendants is 7.01 feet south of the north line of Lot B. Both drawings show that the south 7 feet of Lot A owned by the plaintiffs is a concrete drive. Neither of the drawings attempts to describe the 7.01 foot space north of defendants' brick residence. Plaintiffs in their brief, in describing these two survey drawings, state that they show a common use driveway between the two houses. We find nothing in these two drawings that show or infer the existence of a common use driveway and we are at a loss to understand the statements to that effect that appear in the brief of plaintiffs.

■ Plaintiffs also contend that the building of the driveway extension to the rear of the two residences, which they claim was done jointly, confirms the existence of the 14.01 foot wide common use driveway as shown by the two survey drawings. This contention must fail for two reasons: (1) that the two survey drawings, as we have pointed out, do not show a common use driveway; (2) there is nothing in the evidence to show that the extension of the driveway to the rear was for the common use of plaintiffs and defendants. The trial court found, and so do we, that plaintiffs merely paid their portion of the cost of extending the driveway to the rear, with no agreement that the extended driveway would be jointly used by the respective owners of the lots.

■ The remaining question to be answered is whether there is an easement by necessity. As we pointed out, heretofore, where there is the need of an easement because of necessity, the easement may be established, even though there is an express provision for such an easement which may prove to be inadequate and even though there is no showing of a pre-existing use of a driveway which is a necessary element to be proved in establishing an easement by implication.

■ A way of necessity is sometimes confused with an easement arising, on severance of title, from a pre-existing use. There is a definite distinction between them, mainly because the way of necessity does not rest on a pre-existing use but on the need for a way across the granted or reserved premises. 17 Am.Jur., Easements, § 58, p. 668; 28 C.J.S. Easements § 35, p. 697. The foundation of such a way rests in necessity and not in convenience. Schnider v. M. E. H. Realty Inv. Co., supra. A mere convenience is not sufficient to create an easement by necessity.

In the instant case it is natural that the width of the driveway should be such as is reasonably necessary to accomplish its purposes. Plaintiffs say they need at least 9 feet in order to conveniently use the driveway. As we have pointed out, convenience is not a controlling factor. The sole question is whether or not the driveway they now have, namely, one eight feet in width, is reasonably adequate for its purposes.

■ Plaintiffs' evidence shows that their car at the time of the trial was 79 inches in width, namely 6 feet 7 inches. We think the driveway 8 feet in width, which comprises 7 feet south of plaintiffs' residence and one foot reserved to them in the warranty deed conveying Lot B to defendants, is a sufficient width to meet plaintiffs' reasonable needs in the use of this driveway. In the case of Henderson v. La Capra, supra, an architect testified that all building codes require a minimum width of 8 feet in the building of a driveway. We think the minimum requirement is adequate in the instant case and provides a reasonably adequate driveway for the plaintiffs.

In conclusion, we find that the trial court was correct in finding that the defendants

were chargeable with only one foot of their driveway for the use and benefit of the property owned by the plaintiffs and when it further found that neither the plaintiffs nor the defendants are entitled to any greater rights to the property owned by them respectively than one foot on each other's driveway for driveway purposes as provided in the deeds duly recorded in the Office of the Recorder of Deeds in the County of St. Louis, Missouri.

■ Plaintiffs in their brief complain that the trial court ignored the fact that the St. Louis County Realty Co.'s deed of Lot B to defendants was filed for record two minutes after its deed of Lot A to Mrs. Brown was filed for record. The basis of their complaint is that the trial court treated the deeds as having been simultaneously filed for record. The advantage they claim from this situation is that there could be no reservation by the St. Louis County Realty Co. of a one foot easement over Lot B in favor of the owners of Lot A if the deed conveying Lot A was recorded prior to that conveying Lot B. We are unable to follow the reasoning of plaintiffs in this connection. We think the trial court was right in considering the deeds as having been filed simultaneously. The evidence shows that one deed was filed only two minutes after the other deed. A difference which can be accounted for in the time taken to endorse the filing. Hudson Bros. Commission Co. v. Glencoe Sand & Gravel Co., 140 Mo. 103, 41 S.W. 450.

The decree and judgment of the trial court should be affirmed. It is so ordered.

WOLFE, P. J., and WILLIAM E. BUDER, Special Judge, concur.