Steven BAETJE and Veronica
Baetje, Plaintiffs,

v.

Richard EISENBEIS and Kathy
Eisenbeis, Respondents.

and

Wendell R. Langeneckert and Deborah
A. Langeneckert, Appellants.

No. ED 90649.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 17, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 20, 2009.

Case Transferred to Supreme Court
May 26, 2009.

Case Retransferred to Court of
Appeals Oct. 29, 2009.

Original Opinion Reinstated
Dec. 4, 2009.

James Marks II, Perryville, MO, for appellants.

Robert Huelskamp, Ste. Genevieve, MO, for respondents.

Timothy Iman, Ste. Genevieve, MO, for Plaintiffs.

NANNETTE A. BAKER, Chief Judge.

### Introduction

Wendell and Deborah Langeneckert, the appellants, appeal from the Ste. Genevieve

County Circuit Court judgment granting Richard and Kathy Eisenbeis, the respondents, an implied easement by necessity across the Langeneckerts' property. On appeal, the Langeneckerts argue that there was insufficient evidence to find an implied easement. We reverse because the Eisenbeises failed to produce any evidence concerning the condition of the property at the time of the conveyance in 1988.

### Facts

The underlying action was initially filed by Steven and Veronica Baetje against Richard and Kathy Eisenbeis for misrepresentation related to the purchase of real property. The trial court ruled in the Baetjes' favor, and they do not appeal. The Eisenbeises, however, filed a cross-claim, seeking an easement, naming Wendell and Deborah Langeneckert as third party defendants. In their petition, the Eisenbeises sought an implied easement (count I), a private road (count II) and specific performance of the agreement to execute reciprocal easements (count III). The Eisenbeises also moved for a preliminary injunction to remove the fence over the requested easement, which the trial court granted. A bench trial was held where the following evidence was adduced.

Before 1988, George and Virginia Doll (the Dolls) owned approximately 76.5 acres of land in Ste. Genevieve County. This land is located north of Jackson School Road. A creek runs across the southern portion of this property. In 1988, the Dolls sold 28.5 acres of their land to their son, Dale, while retaining the farm house and barn on the remaining 48 acres. In this sale, they sold Dale the northern portion of the Bridge Road. The Dolls granted Dale an easement across the southern portion of the Bridge Road, which allowed him ingress and egress to his property from Jackson School Road

In 1989, Daniel and Cheryl Vines (the Vines) moved onto adjacent property. Cheryl Vines testified at trial that, in 1989, the Dolls used the Bridge Road, the Creek Road and the Pasture Road to access their farm house and barn. The Bridge Road ran northeast from Jackson School Road and has a concrete bridge over the creek. The Pasture Road branched off the Bridge Road north of the concrete bridge. The Dolls' ownership of the Bridge Road ended after the Pasture Road and the Bridge Road junction. To access their home via the Bridge Road, the Dolls had to cross the northern section of the Bridge Road which Dale owned. The Dolls owned all of the Pasture Road, which ended between their farm house and barn. The Creek Road also connected to Jackson School Road, and it ran northwest along the eastern portion of the Doll property. It did not have a bridge over the creek, but used the creek bed as part of the road. The Dolls' farm house and barn were encircled by both the Bridge Road and the Creek Road. Both roads came together north of the farm house and continued as one road. Dale, not the Dolls, owned the Bridge Road and the Creek Road junction.

In 1993, Dale sold approximately 5.5 acres to the Vines and, in doing so, carved out a "tornado" shaped piece of land encompassing the Bridge Road over which he retained ownership. In 1995, Dale sold his remaining land to the Sawyers. The Sawyers sold the land to the Slinkards in 2001. In 2004, the Slinkards sold the land to the appellants, the Langeneckerts.

In 1997, the Dolls sold the farm house, barn and remaining 48 acres to the Eisenbeises. After the Eisenbeises moved into the farm house, they closed the Pasture Road by placing a fence over it and used the Bridge Road to access their home. They incorrectly believed they owned the entire Bridge Road, when in fact, the Sawyers, and later the Langeneckerts, owned

the tornado shaped section which included the Bridge Road north of the Pasture Road.

In 2005, the Eisenbeises sold the property encircled by the Bridge Road and the Creek Road, which contained the farm house and barn, to the plaintiffs, Steven and Veronica Baetje. The Eisenbeises did not intend to sell the Creek Road or the Bridge Road to the Baetjes, but instead, they planned to grant the Baetjes easements over both roads. The Eisenbeises also intended to build a new home on the remaining northern acres, using the Bridge Road as a means of ingress and egress. They chose to build their new home just north of the Bridge Road and the Creek Road junction.

Before the Baetjes and Eisenbeises closed on the property, the Langeneckerts surveyed their land and learned that they owned the tornado shaped section of the Bridge Road. The Eisenbeises also learned that they contracted to sell to the Baetjes the majority of the Bridge Road, only retaining a small portion of the road for themselves. The Eisenbeises did not have an easement across the sections of the Bridge Road owned by the Baetjes or the Langeneckerts.

On May 12, 2005, the Baetjes and the Eisenbeises closed on the property. The Eisenbeises granted the Langeneckerts an easement over the Creek Road for construction equipment. Also prepared, but unsigned, was the "Roadway Maintenance and Easement Agreement." If it had been executed, this agreement would have granted the Eisenbeises an easement over the Langeneckerts' section of the Bridge Road. The Eisenbeises signed the agreement while Langeneckerts did not.

Shortly after the closing, the Langeneckerts notified both the Eisenbeises and Baetjes that they were to stop using the northern section of the Bridge Road. The Baetjes then restored the Pasture Road.

The Eisenbeises began using the Creek Road, but during periods of heavy rains, high water levels made the Creek Road impassible. Later, the Langeneckerts placed a fence over the northern section of the Bridge Road to prevent the Eisenbeises' use.

The trial court viewed the property. It found that the parties never had an agreement to execute reciprocal easements and, therefore, denied count III. The court found that the Creek Road was not a "reasonably practical way" and could not be used as a dependable means of access. It also found that the Bridge Road existed in 1988 when the Dolls sold a portion of their land to their son, Dale. The court found that the Pasture Road was inadequate because it only provided access to the barn and not the remainder of the property. After setting out the requirements for an implied easement from pre-existing use, the court found that the Dolls retained an implied easement over the Bridge Road, which was then conveyed to the Eisenbeises. It also found that the Eisenbeises retained an implied easement when they sold the property to the Baetjes. Having found that the Eisenbeises had an implied easement, the court denied count II, where the Eisenbeises sought an easement by necessity or a private road. In its judgment, however, the trial court awarded the Eisenbeises an implied easement by necessity.

### Points on Appeal

The Langeneckerts bring six points on appeal. Rule 84.04(d) requires a concise statement of the legal reasons for appellant's claim of error and a summary statement of how the legal reasons in light of the facts of the case result in reversible error. This rule specifically states that detailed evidentiary facts shall not be included. Rule 84.04(d)(4). The argument section must "substantially follow the order of the points relied on" with the point

relied on restated at the beginning of the section of the argument that discusses that point. Rule 84.04(e). The appendix of the brief must also contain the judgment. Rule 84.04(h).

Each of the Langeneckerts' points relied on contain numerous subdivisions in which they present factual arguments to support their points. The argument section of their brief also does not lay out the points relied on, but instead addresses multiple points relied on in three different subsections. Further, the Langeneckerts failed to include a copy of the judgment appealed from in the appendix of their brief. For these reasons, their brief fails to comply with Rule 84.04. However, in light of the fact that this court can discern the claims the Langeneckerts raise on appeal, we will overlook this failure to comply with Rule 84.04. *See Ferguson v. Gulf Oil Corp.*, 382 S.W.2d 34, 36 (Mo.App.1964).

In their first three points on appeal, the Langeneckerts argue that the Eisenbeises failed to present clear and convincing evidence establishing an implied easement from pre-existing use. In their first point, they claim the Eisenbeises failed to present sufficient evidence that at the time of the conveyance the roadway was an obvious benefit to the dominant estate and burden to the servient estate. In their second point, they claim the Eisenbeises failed to present sufficient evidence that the Dolls used the premises in the altered condition long enough before the conveyance and under such circumstances to show that the change was intended to be permanent. In their third point, they claim the Eisenbeises failed to present sufficient evidence that easement was a reasonably necessity.

In their fourth point on appeal, the Langeneckerts argue that trial court misapplied the law in determining that an implied easement by necessity existed. Additionally, in their fifth point, they allege that the Eisenbeises presented insufficient evidence that they had a necessity for the easement. Finally, in their last point, the Langeneckerts claim that the trial court erred in determining that the Eisenbeises were entitled to a private road because there was insufficient evidence to establish a strict necessity.

### Standard of Review

As this case was tried without a jury, we will apply the standard announced in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless "there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* When determining whether the judgment was against the manifest weight of the evidence, we will proceed with caution and reverse only with the firm belief that the judgment is wrong. *Id.*

### Discussion

■■■ To establish an implied easement from pre-existing use, the petitioner must prove the following elements: "(1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance and under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement." *Causey v. Williams*, 398 S.W.2d 190, 197 (Mo.App. 1966). The elements must be proved by clear and convincing evidence. *Russo v. Bruce*, 263 S.W.3d 684, 687 (Mo.App. S.D. 2008). The existence of an express easement does not negate the existence of an easement implied from pre-existing use. *Hillside Development Co., Inc. v. Fields*, 928 S.W.2d 886, 889 (Mo.App. W.D.1996).

468

■ In *Causey*, the court cautioned that the "law does not favor the implication of easements and the courts are reluctant to infringe upon the rights normally incident to the absolute ownership of land." *Causey*, 398 S.W.2d at 197. Implied easements, however, are sometimes necessary for the full utilization of land and to prevent land from being unfit for occupancy. *Id.* That court stated further justification: "A presumption frequently invoked is that the parties contracted with a view of the conditions of the property *as it actually was at the time of the transaction* and that after sale neither party has a right, without consent of the other, to change to the detriment of the other, *a condition which openly and visibly exists.*" *Id.*

■ On appeal, the Langeneckerts argue that Eisenbeises failed to prove by clear and convincing evidence an obvious benefit to the dominant estate and burden to the servient portion of the premises at the time of conveyance. We agree. The Eisenbeises failed to produce any evidence that the Bridge Road was used to access the farm house on the undivided Doll property before the 1988 conveyance. At trial, the Eisenbeises presented the testimony of Cheryl Vines, who moved onto the adjacent property in 1989. Vines testified that the Dolls used both the Bridge Road and the Pasture Road to access their home. This testimony, however, does not establish how the property was used at the time of the conveyance since it describes the property one year after the conveyance. Upon review of the record, we find that the Eisenbeises presented no evidence of the condition of the property at the time of the conveyance.

Because the Eisenbeises failed to produce any evidence concerning the condition of the property at the time of the conveyance, they have failed to prove the second element of an implied easement by pre-

existing use. There is no substantial evidence to support the judgment of the trial court, and therefore, we reverse. This point is dispositive of whether the Eisenbeises had an implied easement by pre-existing use, and we need not consider the Langeneckerts' remaining points on this issue.

In their fourth and fifth points, the Langeneckerts argued that the trial court erred in determining that the Eisenbeises had an implied easement by necessity. After setting forth and analyzing the elements for an implied easement by pre-existing use, the trial court awarded the Eisenbeises an "implied *easement by necessity* for ingress and egress" (emphasis added). We are unable to determine whether the trial court intended to grant an easement by necessity or inadvertently named the wrong type of easement in its order. Therefore, we will review whether the Eisenbeises presented sufficient evidence of an easement by necessity.

■ The common law doctrine of easement by necessity differs from an implied easement from a pre-existing use because it does not require the petitioner to show a pre-existing road or use. *Causey*, 398 S.W.2d at 199. An easement by necessity arises "whenever land has been sold which is inaccessible except by passing over the land of the grantor." *Vossen v. Dautel*, 116 Mo. 379, 22 S.W. 734, 735 (1893). To obtain an easement by necessity, the petitioner must show prior unity of title, and subsequent deprivation of access to a public roadway. *Orvis v. Garms*, 638 S.W.2d 773, 778 (Mo.App. S.D.1982); *McDougall v. Castelli*, 501 S.W.2d 855, 858–59 (Mo.App.1973). An easement by necessity will not arise from proof that the easement will be convenient. *Henderson v. La Capra*, 307 S.W.2d 59, 64 (Mo.App. 1957). "The foundation of the easement must be *necessity* and not *convenience.*" *Id.* If one has a substitute way off the land,

he or she is not entitled to an easement by necessity. *Id.* "[T]his is true even if the substituted way is less suitable, quite inconvenient and involves substantial cash outlay." *Id.*

We will address the Langeneckerts' points out of order, because the fifth point is dispositive. In this point, they argue that the evidence was insufficient to prove that there was a necessity for the easement. The record shows that the Eisenbeises had a substitute way off the land, the Creek Road. It provides a means of ingress and egress even though it is less suitable, inconvenient and would involve cash outlay. The trial court erred in awarding the Eisenbeises an easement by necessity.

Additionally, while the trial court specifically denied the Eisenbeises' request for a private road pursuant to Section 228.342 RSMo (2007), the trial court stated that "if it had not found that the implied easement was valid, it would have found that Eisenbeis' [sic] had met their burden of proof and held that they were entitled to a private road over the currently existing private road." To establish a private road under Section 228.342, the plaintiff is required to show "(a) the plaintiff owns the land, (b) no public road goes through or alongside the tract of land, and (c) the private road petitioned for is a way of 'strict necessity.'" *Farrow v. Brown,* 873 S.W.2d 918, 920 (Mo.App. E.D.1994).

It is undisputed that the Eisenbeises own the property and that no public road runs alongside their property. The disputed issue is whether the Eisenbeises have a "strict necessity" to use the Bridge Road. A petitioner can show strict necessity by showing he or she lacks a legally enforceable right to use a practicable way to and from his or her land, either private or public. *Anderson v. Mantel,* 49 S.W.3d 760, 763 (Mo.App. S.D.2001); *Farrow,* 873 S.W.2d at 920. The Eisenbeises

do not lack a legally enforceable right of ingress and egress, as they have an easement over the portions of the Creek Road that they do not own. The question, however, is whether the Creek Road is a reasonably practical way. We find that it is.

"The law does not contemplate that a way is reasonable and practical if it would require an expenditure of an unreasonable amount of money in order to construct and maintain it in a dependable, usable condition." *Evans v. Mansfield,* 364 S.W.2d 548, 551 (Mo.1963). In *Evans,* the court found that the alternate route was not reasonably practical because the hazardous combination of hills, hallows, and deep gullies made the road impassible after each rain. *Id.* The court also noted that plaintiff presented evidence that the cost of maintaining the road was five times as much as an ordinary road because the required culverts would wash out with heavy rains. *Id.* at 550.

The case at bar is distinguishable from *Evans.* In *Evans,* multiple sections of the road were impassable. In this case, only one portion of the road, the creek bed, floods after periods of heavy rain. When asked how many times a year he was unable to cross the Creek Road, Richard Eisenbeis stated approximately 10 times. In *Evans,* the road could not be used on a daily basis and was impassable after each rain. *Evans,* 364 S.W.2d at 549–50.

Also, in *Evans,* the petitioner presented other witnesses who testified to the condition of the road. These witnesses included a road contractor who testified that it would be very expensive to maintain the road. In this case, the evidence that the Eisenbeises presented consisted of their own testimony and pictures of the creek after a period of heavy rain. They failed to present any other evidence regarding the Creek Road. The Eisenbeises did not call an engineer or contractor, or take any other steps to improve the road or build a

bridge. They provided no evidence of the cost to construct a bridge over the creek or the cost to maintain Creek Road in periods of high rain. The only evidence on this point was Mr. Eisenbeis's testimony that his property ended at the creek bed, and that he would be unable to build a bridge across the Creek Road because he does not own the other side of the creek. The Eisenbeises, however, have an easement across the Creek Road.

The Langeneckerts, on the other hand, had a civil engineer inspect the creek and the Creek Road. The engineer testified that the Creek Road had a solid foundation and could be modified to overcome the water issues.

Convenience will not satisfy the requirement of strict necessity. *Beery v. Shinkle,* 193 S.W.3d 435, 441 (Mo.App. W.D.2006). It appears that the Eisenbeises' use of the Bridge Road is more "convenient" than attempting to construct and maintain the Creek Road in a dependable, usable condition. This convenience will not support a finding of strict necessity.

As the Eisenbeises failed to present evidence of the cost of modifying and maintaining the Creek Road, the Eisenbeises have failed to meet their burden of proof on the issue of strict necessity. Further, the trial court's determination that an unreasonable amount of money would be necessary to maintain the Creek Road is unfounded as no evidence was presented on this issue.

### Conclusion

For the foregoing reasons, the judgment of the trial court is reversed.

PATRICIA L. COHEN, J., and KENNETH M. ROMINES, J., concur.