Patricia A. DOHOGNE,
Plaintiff/Respondent,

v.

Pamela J. COUNTS, Michelle Fike
and Steve Delcambre, Defendants/Appellants.

No. ED 92911.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 23, 2010.

Rehearing Denied April 19, 2010.

Walter S. Drusch, Jr., Cape Girardeau, MO, for Plaintiff/Respondent.

Michael L. Jackson, Jackson, MO, for Defendants/Appellants.

Before SHERRI B. SULLIVAN, P.J., ROBERT G. DOWD, JR., J., and PATRICIA COHEN, J.

SHERRI B. SULLIVAN, Presiding Judge.

### Introduction

Pamela J. Counts (Counts), Michelle Fike, n/k/a Michelle Burgess (Burgess) and Steve Delcambre (Delcambre) (collectively Appellants) appeal from the trial court's declaratory judgment and perma-

nent injunction entered in favor of Patricia A. Dohogne (Respondent), ordering Appellants to remove a fence erected by Appellants that prevented Respondent's lawful use by virtue of a joint easement of the driveway between the respective parties' properties. We affirm.

### Factual and Procedural Background

Respondent owns the house and lot at 510 North Farmington Road (hereinafter referred to as either "Respondent's property/house/home" or "510 North Farmington Road") in the City of Jackson, Missouri. Counts owns the house and lot at 514 North Farmington Road (hereinafter referred to as either "Count's property/house/home" or "514 North Farmington Road"), north of and adjacent to Respondent's property.[1] North Farmington Road runs north and south in front of both properties. The gravel driveway, which is the subject of this action runs east and west, perpendicular to North Farmington Road, between Respondent and Counts' homes. With the exception of a small corner where the driveway, at its widest point, opens onto North Farmington Road, the driveway lies entirely on Counts' lot and runs in a straight line from and perpendicular to North Farmington Road to a detached garage belonging to Counts located near the rear of Counts' lot. Respondent has a paved driveway which runs from North Farmington Road to an attached one car garage on the south side of Respondent's house. Respondent's house also has a carport at the northwest corner of the house and additional parking beyond the carport which Respondent and her predecessors in title have accessed through use of the subject gravel driveway.

### History of Driveway

At the time of trial, the driveway between the properties had existed for 47 years, since 1962. Both properties were once commonly owned by James and Linda Malone (the Malones), the original owners and developers of the Sunny Slope Subdivision in which both Counts' and Respondent's properties are situated. The Malones lived in Respondent's home until 1962, when it was sold to Penny and Jeanne Kurre (the Kurres). The Malones, upon selling Respondent's property to the Kurres, moved next door into Counts' house. When the Kurres purchased 510 North Farmington in 1962, there was a garage and a chicken house at the rear of the lot that the Kurres accessed through use of the gravel driveway running between the homes. At that time, there was also access to the rear of the lot at 510 North Farmington Road from Harrison Drive, a public street running north and south, parallel to North Farmington Road, at the rear of the property. In January 1992, the Kurres sold the property to Malones' granddaughter and her husband, Christie and Rick Guilliams (Guilliams). The Guilliams sold the back half of the lot, thus cutting off the Harrison Drive access to the lot. The Guilliams owned the property until May 1993, when they sold the property to Michael and Tandy Wendall.

Mr. Kurre testified that he and his wife owned what is now Respondent's property (plus the back lot that fronts on Harrison Drive) from 1962 until 1990. Mr. Kurre testified that when he and his wife bought that property, Mr. Malone represented to him that the driveway was shared and that the property line ran through the center of the driveway. Mr. Kurre testified that he

---

1. Although Counts is the record owner of the property at 514 North Farmington Road, she does not reside there. Rather, her daughter,

son-in-law, and 2 grandchildren occupy the property, as elucidated later in this opinion.

later learned that the property line was actually further on his side. Mr. Kurre also testified that after Mr. Malone's death, when the City of Jackson installed curbs and guttering on North Farmington Road, Mr. Kurre built up the drive to drain to the street, thus moving the drive entirely (except for the south front corner of the driveway) onto Mrs. Malone's property.

Both Mr. and Mrs. Kurre testified that the arrangement between the Malones and the Kurres regarding the gravel driveway was one of mutual respect for the use of the driveway. Mr. Kurre testified that the property owners used the driveway with mutual permission.

Christie Guilliams testified that the driveway was always a shared driveway used by both parties because that's the way her grandmother, Linda Malone, wanted it. Under cross-examination, Guilliams testified that both property owners used the driveway permissively, that Guilliams gave her grandmother permission to use the driveway and vice versa.

The Wendalls, who owned Respondent's property from April 1993 until April 1996, did not testify, and thus there was no evidence of what use the Wendalls made of the driveway during the time they owned the property.

The Wendalls conveyed Respondent's property to Daniel and Roberta Brown in April 1996. The Browns lived on the property until April 2005 when the property was conveyed to Respondent. Linda Malone lived next door on what is now Counts' property throughout the time that the Browns owned Respondent's property. Mr. Brown testified that there was never any discussion between the Browns and Linda Malone regarding the Browns' use of the driveway, though the Browns did use the driveway as the sole means of access to the carport and the rear of their property.

When asked on direct examination if there was ever any discussion between Mr. Brown and Mrs. Malone as to "who could use what and whose was whose," Mr. Brown stated,

> That never came up officially. We would meet out in the yard, and I mowed her yard. She was a disabled lady, and I even cared for her wooden garage back there for her, and that was kind of our understanding. I helped her with her situation, and I even helped her maintain the driveway and never was anything said, you can't use this driveway. It was all very amiable.

Counts bought the 514 North Farmington Road property in May 2005. Burgess, Counts' daughter, has occupied the property since that time with her husband and two children. Burgess testified that she and her husband occasionally parked their vehicle next to Counts' garage, placing their vehicle about two feet over onto Respondent's property. Respondent complained and insisted that Burgess not park next to Counts' garage over onto Respondent's property without permission. Burgess further testified that Respondent's free and unrestricted access to the gravel driveway limits the parking available to Counts' property.

Delcambre is Counts' fiance, and lives with her at 301 Carolina Place in Jackson, Missouri. Delcambre acknowledged that on July 31, 2007, he erected the rail fence on Counts' side of the dividing line between the properties, running from the southwest corner of Counts' garage to a point just past the northeast corner of Respondent's house. The fence, though located on the Counts' side of the dividing line between the properties, crosses the section of the gravel driveway which turns south into Respondent's carport, cutting

off Respondent's access to her carport and adjacent parking area. When asked whether the "fence ha[s] any earthly purpose except to keep [Respondent] from getting onto her carport," Delcambre replied, "That's exactly why it's there."

Mr. Brown testified that Harrison Drive was not a way of access to the rear of his property when he lived at 510 North Farmington Road, and to use it would require going through somebody else's yard and garden. He stated that the gravel driveway was the only way for him to get back to the carport. Mr. Kurre also testified that the gravel driveway was the only access to the rear of the house and carport at 510 North Farmington Road and that it was impossible to get from Harrison Drive to any portion of the property. Respondent also testified that the gravel driveway was the only access to the carport and parking area at the rear of her property.

### Judgment

After a bench trial, the court entered its Judgment directing Appellants to remove the fence erected by Delcambre and permanently enjoining Appellants from replacing the fence or otherwise erecting a fence or barrier at or near the driveway in such a way as to obstruct Respondent's use of the driveway for ingress to and egress from the carport and parking area lying behind Respondent's residence. The court also permanently enjoined Appellants from interfering with the use of the driveway by Respondent for ingress to and egress from the property behind Respondent's residence. This appeal follows.

### Points on Appeal

In their first point, Appellants claim that the trial court erred in granting mandatory injunctive relief against Appellants ordering them to permit Respondent, her heirs, successors, assigns and invitees to freely use the gravel driveway described in the court's judgment for ingress to and egress from Respondent's property and by permanently enjoining Appellants from maintaining a fence or barrier near or upon the gravel driveway or in any way obstructing Respondent's use of the gravel driveway for ingress to or egress from the carport and parking area located on Respondent's property behind Respondent's residence because the judgment of the trial court is not supported by competent and substantial evidence on the record as a whole, is against the greater weight of the evidence or involves a misinterpretation of law or a misapplication of the facts to the law, in that the injunctive relief granted by the trial court against Appellants presupposes the existence of an implied easement in favor of Respondent in the gravel driveway and Respondent, bearing the burden of proof, failed to prove by clear and convincing evidence two essential elements which Respondent was required to prove to establish an easement by implication, namely: 1) use of the premises by the common owner in the altered condition (with the gravel driveway) long enough before the conveyance under such circumstances as to show the change was intended to be permanent; and 2) reasonable necessity for the easement.

In their second point, Appellants maintain that the trial court erred in granting mandatory injunctive relief against Appellants ordering them to permit Respondent, her heirs, successors, assigns and invitees to freely use the gravel driveway described in the court's judgment for ingress to and egress from Respondent's property and by permanently enjoining Appellants from maintaining a fence or barrier near or upon the gravel driveway or in any way obstructing Respondent's use of the gravel driveway for ingress to or egress from the

carport and parking area located on Respondent's property behind Respondent's residence because the judgment of the trial court is not supported by competent and substantial evidence on the record as a whole, is against the greater weight of the evidence or involves a misinterpretation of law or a misapplication of the facts to the law, in that the injunctive relief granted by the trial court against Appellants presupposes the existence of a prescriptive easement in favor of Respondent in the gravel driveway and Respondent failed to prove by clear and convincing evidence the essential element of adverse use required to establish a prescriptive easement.

In their third point, Appellants assert that the trial court erred in granting mandatory injunctive relief against Appellants ordering them to permit Respondent, her heirs, successors, assigns and invitees to freely use the gravel driveway described in the court's judgment for ingress to and egress from Respondent's property and by permanently enjoining Appellants from maintaining a fence or barrier near or upon the gravel driveway or in any way obstructing Respondent's use of the gravel driveway for ingress to or egress from the carport and parking area located on Respondent's property behind Respondent's residence, because the judgment of the trial court is not supported by competent and substantial evidence on the record as a whole, is against the weight of the evidence or involves a misinterpretation of law or a misapplication of the facts to the law, in that there was no evidence presented to the trial court of the legal description of the gravel driveway nor any means by which the court, on the record evidence, could have determined the legal description of the gravel driveway, described by metes and bounds in the trial court's judgment and there is thus no support in the

record for the trial court's findings and judgment granting Respondent free use of and enjoining Appellants from interfering with Respondent's free use of the gravel driveway, as described in the court's judgment.

In their fourth point, Appellants state that the trial court erred in ordering Appellants to permit Respondent, her heirs, successors, assigns and invitees to freely use the driveway described in the court's judgment for ingress to and egress from Respondent's property and permanently enjoining Appellants from maintaining a fence near or upon the gravel driveway or in any way obstructing Respondent's use of the gravel driveway for ingress to or egress from Respondent's carport and the property behind the property's residence, because the judgment, as entered, violates the provisions of Rule 92.02(e),[2] which requires that every order granting an injunction shall set forth the reasons for its issuance and be specific in its terms, in that the judgment of the trial court states no reason for issuance of the injunction and while premised (presumably) upon the existence of some right of Respondent in and to Appellants' property fails to determine and declare the nature and extent of that right, more specifically whether Respondent's right to use of the driveway described in the court's judgment is, in fact, derived from an easement arising by express grant, implication or prescription.

### Standard of Review

 An action seeking an injunction is an action in equity. *Citizens for Ground Water Protection v. Porter*, 275 S.W.3d 329, 347 (Mo.App. S.D.2008). The standard of review in a court-tried action in equity is that of a judge-tried case: the trial court's judgment will be sustained

**2.** All rule references are to Mo. R. Civ. P.2009, unless otherwise indicated.

unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or unless it erroneously applies the law. *Id.* Likewise, when reviewing an action for a declaratory judgment, our standard of review is the same as in any other court tried case. *Id.*

## Discussion

### Point I–Implied Easement

■ To establish an implied easement from pre-existing use, the petitioner must prove the following elements: " '(1) unity and subsequent separation of title; (2) obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of conveyance; (3) use of the premises by the common owner in their altered condition long enough before the conveyance and under such circumstances as to show that the change was intended to be permanent; and (4) reasonable necessity for the easement.' " *Baetje v. Eisenbeis*, 296 S.W.3d 463, 467 (Mo.App. E.D.2009), quoting *Causey v. Williams*, 398 S.W.2d 190, 197 (Mo.App.St.L.1966). The elements must be proved by clear and convincing evidence. *Baetje*, 296 S.W.3d at 467, citing *Russo v. Bruce*, 263 S.W.3d 684, 687 (Mo.App. S.D.2008). "In *Causey*, the court cautioned that the 'law does not favor the implication of easements and the courts are reluctant to infringe upon the rights normally incident to the absolute ownership of land.' " *Baetje*, 296 S.W.3d at 468, quoting *Causey*, 398 S.W.2d at 197. Implied easements, however, are sometimes necessary for the full utilization of land and to prevent land from being unfit for occupancy. *Baetje*, 296 S.W.3d at 468, citing *Causey*, 398 S.W.2d at 197. " 'A presumption frequently invoked is that the parties contracted with a view of the conditions of the property *as it actually was at the time of the transaction* and that after

sale neither party has a right, without consent of the other, to change to the detriment of the other, *a condition which openly and visibly exists.*' " *Baetje*, 296 S.W.3d at 468, quoting *Causey*, 398 S.W.2d at 197 (emphasis in original).

### Unity and subsequent separation of title

■ This element is established by the fact that both properties were once owned by James and Linda Malone, and there was a driveway between the homes on the properties at the time title was split. Appellants attempt to claim that the former uses and exact location of the driveway vary somewhat with the use and location of it today. Appellants are splitting hairs with regard to the driveway's location being slightly adjusted to the south or north for drainage or remodeling purposes. The use of the driveway is for ingress to and egress from the rear of the property. Whether the driveway provided access to a chicken coop that was there in the past, or a carport that is there today, makes no difference.

### Obvious benefit to the dominant estate and burden to the servient portion of the premises existing at the time of conveyance

■ This element has been demonstrated by Respondent through her testimony, as well as that of Mr. Brown, Mr. Kurre and Respondent. There is no access to the carport and parking at the rear of Respondent's property except through use of the gravel driveway, as set forth by their testimony. Respondent needs to use the driveway to access the carport and parking at the rear of her property. Appellants have not presented evidence discounting this fact. Their assertion of access from Harrison Road was proven unfounded. Also, their suggestion of making the attached garage on the south

a "drive-through" garage does not aid their case. The benefit/burden element under discussion requires an examination of past use and reliance, and Appellants' suggestion treads into easement by necessity territory, as evidenced by their conclusion that Respondent's property is not, and has never been, "landlocked."

*Use of the premises by the common owner in their altered condition long enough before the conveyance and under such circumstances as to show that the change was intended to be permanent*

■ Respondent provided ample testimony of prior common owners of the property to show that the gravel driveway was used for a long time as, and intended to be, a shared easement between the properties. This testimony is set out in the factual portion of this opinion and includes the testimony of Mrs. Malone's granddaughter regarding her grandmother's intent for the use of the property; and likewise the testimony of both the Kurres, the Browns, the Guilliams, Counts and Respondent—spanning a period of almost fifty (50) years wherein through a "gentlemen's agreement" the use of the gravel driveway was consistently shared by the respective owners of 510 and 514 North Farmington Road. We find that Respondent proved by clear and convincing evidence that the gravel driveway was used by Respondent and other owners of 510 North Farmington Road to access the rear of the property, including the car port and parking area, well before Respondent's purchase of the property in April 2005 and Counts' purchase of the property at 514 North Farmington Road in May 2005.

*Reasonable necessity for the easement*

■ As discussed under the burden/benefit element, Respondent established a reasonable necessity for the ease-

ment. She has no other way of ingress and egress to the rear of her property, and the suggestions of alternatives made by Appellants are not reasonable.

Based on the foregoing, we find that the trial court's declaratory judgment and mandatory injunction are supported by substantial evidence in that Respondent proved that she has an easement by implication in the gravel driveway as described in the trial court's judgment. Point I is therefore denied.

### Point II—Prescriptive Easement

Our resolution of Point I renders this point moot. Accordingly, Point II is denied as moot.

### Point III—Description of Property

■ In their brief, Appellants maintain that:

The gravel driveway which is in dispute in this litigation is described by metes and bounds in the trial court's judgment, as required by this court in *Maune v. Beste,* 292 S.W.3d 528 (Mo. App. E.D.).

Counsel for Appellants, being at some disadvantage having not represented Appellants at the time of trial, has thoroughly reviewed the transcript and exhibits and has found no evidentiary support for the metes and bounds description (of the driveway) which is set out in the trial court's judgment.

In *Maune v. Beste,* 292 S.W.3d 528 (Mo. App. E.D.2009), this Court held that the trial court's judgment that granted the defendants a prescriptive easement over the plaintiffs' property was not a final judgment, because the judgment did not contain any legal description of the plaintiffs' property, nor did it provide any description as to the location of the prescriptive easement granted in favor of the

defendants. *Id.* at 529–30. We also noted that:

> Although there may be evidence in the record from which the legal description could be determined, the trial court makes no mention of this evidence, nor does it incorporate it into the judgment as the legal description of the property or easement. Thus, the judgment is 'so wanting in descriptive detail as to be either void or unenforceable.'

*Id.* at 530.

The deficiencies found in *Maune* are absent in the instant case. First, Respondent's Exhibit 20 is the plat of a survey of the subject property, i.e., the driveway, drawn to scale and dated July 24, 2007, from which the court was able to describe in metes and bounds within its judgment. This metes and bounds description is identical to that which was contained in Respondent's First Amended Petition, and was identified and testified to by Tim Sanders, the surveyor who prepared the plat and survey. Exhibit 20 was received into evidence without objection by Appellants. As such, contrary to Appellants' assertion, there is evidence in the record upon which the trial court's description was based.

Also, the trial court included, in descriptive detail, the exact property subject to its judgment, to-wit:

> A STRIP OF LAND IN LOT 3, BLOCK 3 OF MALONE SUNNY SLOPE SUBDIVISION IN THE CITY OF JACKSON IN CAPE GIRARDEAU COUNTY, MISSOURI DESCRIBED AS FOLLOWS: Commence at the Southwest corner of Lot 2, Block 3 of Malone Sunny Slope Subdivision (5/8″ iron rod); thence N 05*30′00″ W along the East line of Farmington Road, 128.59 feet for the point of Beginning: Thence continue N 05*30′00″ W along the East line of Farmington Road 12.27 feet; thence S 85*49′14″ E, 36.85 feet; thence N 89*28′45″ E, 35.91 feet, thence S 85*39′57″ E, 31.40 feet; thence S 04*20′03″ W, 23.78 feet; thence N 85*13′03″ W, 38.00 feet; thence N 07*00′00″ E, 9.57 feet; thence N 83*00′00″ W, 35.64 feet; thence 88*26′33″ W, 8.94 feet the Point of Beginning.

This description is supported by evidence in the record, and is laid out accordingly in the judgment. As such, Point III is denied.

### *Point IV—Rule 92.02(e)*

■■■■ Rule 92.02(e) provides:

> (e) Form and Scope of Injunction or Temporary Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Rule 92.02 applies to temporary restraining orders and preliminary injunctions, to-wit: **92.02. Temporary Restraining Order—Notice—Preliminary Injunction—Bond—Form and Scope.** In the instant case, the court issued a permanent injunction; as such, Rule 92.02 does not apply. Furthermore, neither party requested findings of fact or conclusions of law, which the court specifically noted in its judgment. In any event, even if the rule did apply, Appellants have not preserved this issue for review, as they did not file a motion to amend the judgment to include

findings of fact, as they were required to do under Rule 78.07(b) and (c):

(b) Except as otherwise provided in Rule 78.07(c), in cases tried without a jury or with an advisory jury, neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review.

(c) In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review.

Accordingly, Point IV is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., and PATRICIA L. COHEN, JJ., concur.